# REAGAN *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF TEXAS.

No. 755. Submitted March 4, 1895. — Decided March 25, 1895.

The offence of knowingly smuggling or clandestinely introducing goods
etc., subject to duty into the United States without paying such duty, in
violation of the provisions of Rev. Stat. § 2865, and of concealing such
smuggled goods, is only a misdemeanor, and the defendant is only en-
titled to three peremptory challenges.

When a person accused of crime offers himself as a witness in his own
behalf, the court is not at liberty to charge the jury directly or indirectly
that the defendant is to be disbelieved because he is a defendant; but, on
the other hand, the court may, and sometimes ought to, remind the jury
that interest creates a motive for false testimony; that the greater the
interest the stronger is the temptation; and that the interest of the
defendant in the result of the trial is of a character possessed by no
other witness, and is therefore a matter which may seriously affect the
credence that shall be given to his testimony.

In this case the defendant, accused of the offence of smuggling, was a wit-
ness on his own behalf. The court instructed the jury thus: " You should
especially look to the interest which the respective witnesses have in the
suit or in its result. Where the witness has a direct personal interest
in the result of the suit the temptation is strong to color, pervert, or
withhold the facts. The law permits the defendant, at his own request,
to testify in his own behalf. The defendant here has availed himself
of this privilege. His testimony is before you and you must determine
how far it is credible. The deep personal interest which he may have
in the result of the suit should be considered by the jury in weighing
his evidence and in determining how far or to what extent, if at all, it
is worthy of credit." *Held,* that there was, in this instruction, nothing
of which complaint could reasonably be made.

THE case is stated in the opinion.

*Mr. A. H. Garland* for plaintiff in error.

*Mr. Solicitor General* for defendants in error.

MR. JUSTICE BREWER delivered the opinion of the court.

On April 30, 1894, the defendant was found guilty by the verdict of a jury in the Circuit Court of the United States for the Western District of Texas of a violation of section 3082, Revised Statues, in unlawfully, fraudulently, wilfully, knowingly, and with intent to defraud the United States, receiving into his possession and concealing forty head of cattle which had been with like intent smuggled and introduced into the United States from the Republic of Mexico. Judgment having been entered on the verdict, he sued out this writ of error.

The first question presented is in respect to peremptory challenges. Section 819, Rev. Stat., after providing for challenges in capital offences, reads, " on the trial of any other felony, the defendant shall be entitled to ten and the United States to three peremptory challenges; and in all other cases, civil and criminal, each party shall be entitled to three peremptory challenges." The contention is that the offence charged is a felony, and that, therefore, defendant was entitled to ten peremptory challenges. The Circuit Court ruled otherwise, and allowed him only three. The question then is whether the offence charged is a felony. The claim of defendant is based upon the character of the punishment, which is a fine not exceeding $5000 nor less than $50, or imprisonment for any time not exceeding two years, or both. By § 5541, Rev. Stat., imprisonment for a period longer than one year may be in a penitentiary, and such an imprisonment, it is said, is the test of felony. It may be conceded that the present common understanding of the word departs largely from the technical meaning it had at the old common law. This departure is owing to the fact that the punishments other than death, to wit, forfeiture of the lands or goods of the offender, which formerly constituted the test of a felony, are no longer inflicted, at least in this country, and to the further fact that in many of the States offences are by statute divided into two classes, felonies and misdemeanors, the former including all offences punishable by death or imprisonment in a penitentiary, and the latter those punishable only by fine or imprisonment in a county jail, and in other States, in which no statutory classification is prescribed, many offences punishable by imprisonment in a

penitentiary are in terms declared to be felonies. These matters have thrown about the meaning of the word as ordinarily used no little uncertainty. Indeed, in Webster's Dictionary, after the common-law definition of the term, there are quoted from John Stuart Mill these pertinent observations: "There is not a lawyer who would undertake to tell what a felony is, otherwise than by enumerating the various kinds of offences which are so called. Originally, the word 'felony' had a meaning: it denoted all offences the penalty of which included forfeiture of goods; but subsequent acts of Parliament have declared various offences to be felonies, without enjoining that penalty, and have taken away the penalty from others, which continue, nevertheless, to be called felonies, in so much that the acts so called have now no property whatever in common, save that of being unlawful and punishable." 1 Mill's Logic, 40.

There is no statutory definition of felonies in the legislation of the United States. We must, therefore, look elsewhere for the meaning of the term. The question was recently before us in *Bannon and Mulkey* v. *United States,* 156 U. S. 464, 468, and Mr. Justice Brown, delivering the opinion of the court, after referring to the statutory provisions in some of the States, said: "But in the absence of such statute the word is used to designate such serious offences as were formerly punishable by death, or by forfeiture of the lands or goods of the offender. *Ex parte Wilson,* 114 U. S. 417, 423." See also *United States* v. *Palmer,* 3 Wheat. 610.

But in this case we need not refer to the common law for a classification of the offence. Section 2865, Revised Statutes, provides that "if any person shall knowingly . . . smuggle, or clandestinely introduce into the United States any goods, wares, or merchandise, subject to duty by law . . . without paying or accounting for the duty . . . every such person . . . shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding five thousand dollars or imprisoned for any term of time not exceeding two years, or both." By this section smuggling is in terms declared a misdemeanor. The penalty imposed is

substantially the same as that by § 3082, and the charge of which the defendant was convicted, under this section, was of receiving and concealing smuggled cattle. The latter offence is subordinate to the former. It therefore cannot be an offence of a higher grade. If, for instance, the crime of larceny was by statute classified as a misdemeanor, the receiving of stolen property should not, in the absence of clear language in the statute demanding it, be placed in a higher class. And so of smuggling; when that which is the principal offence is specifically defined a misdemeanor, the subordinate offence of receiving and concealing the smuggled goods ought not to be held a felony unless there be some statutory definition or equally significant provision. There is no such definition, and the punishment prescribed in the two sections is substantially the same. It is neither death nor forfeiture of the lands or goods of the offender. It is true the latter section provides that the smuggled goods shall be forfeited, but these may or may not be the property of the defendant; and the forfeiture of the thing, in respect to which an offence is committed, is not the equivalent of a forfeiture of the lands or goods of the offender. The ruling of the Circuit Court was correct. The offence was nothing but a misdemeanor, and the defendant was only entitled to three peremptory challenges.

A second objection is that the court gave this instruction: "You should especially look to the interest which the respective witnesses have in the suit or in its result. Where the witness has a direct personal interest in the result of the suit the temptation is strong to color, pervert, or withhold the facts. The law permits the defendant, at his own request, to testify in his own behalf. The defendant here has availed himself of this privilege. His testimony is before you and you must determine how far it is credible. The deep personal interest which he may have in the result of the suit should be considered by the jury in weighing his evidence and in determining how far or to what extent, if at all, it is worthy of credit."

By the act of March 16, 1878, c. 37, 20 Stat. 30, a defendant in a criminal case may, "at his own request but not otherwise, be a competent witness." Under that statute it is a

matter of choice whether he become a witness or not, and his failure to accept the privilege " shall not create any presumption against him." This forbids all comment in the presence of the jury upon his omission to testify. *Wilson* v. *United States*, 149 U. S. 60.

On the other hand, if he avail himself of this privilege, his credibility may be impeached, his testimony may be assailed, and is to be weighed as that of any other witness. Assuming the position of a witness, he is entitled to all its rights and protections, and is subject to all its criticisms and burdens. It is unnecessary to consider whether, when offering himself as a witness as to one matter, he may either, at the will of the government or under the discretion of the court, be called upon to testify as to other matters. That question is not involved in this case, and we notice it simply to exclude it from the scope of our observations. The privileges and limitations to which we refer are those which inhere in the witness as a witness, and which affect the testimony voluntarily given. As to that, he may be fully cross-examined. It may be assailed by contradictory testimony. His credibility may be impeached, and by the same methods as are pursued in the case of any other witness. The jury properly consider his manner of testifying, the inherent probabilities of his story, the amount and character of the contradictory testimony, the nature and extent of his interest in the result of the trial, and the impeaching evidence in determining how much of credence he is entitled to.

It is within the province of the court to call the attention of the jury to any matters which legitimately affect his testimony and his credibility. This does not imply that the court may arbitrarily single out his testimony and denounce it as false. The fact that he is a defendant does not condemn him as unworthy of belief, but at the same time it creates an interest greater than that of any other witness, and to that extent affects the question of credibility. It is, therefore, a matter properly to be suggested by the court to the jury. But the limits of suggestion are the same in respect to him as to others. It is a familiar rule that the relations of a witness to

the matter to be decided are legitimate subjects of considera-
tion in respect to the weight to be given to his testimony.
The old law was that interest debarred one from testifying, for
fear that such interest might tend to a perversion of the truth.
A more enlightened spirit has thrown down this barrier, and
now mere interest does not exclude one from the witness
stand, but the interest is to be considered as affecting his cred-
ibility.  This rule is equally potent in criminal as in civil
cases, and in neither is it error for the trial court to direct the
attention of the jury to the interest which any witness may
have in the result of the trial as a circumstance to be con-
sidered in weighing his testimony and determining the cre-
dence that shall be given to his story.

A reference to a few authorities upon this point may not be
inappropriate.  In *People* v. *Cronin*, 34 California, 191, 195, 204,
this instruction was given: " The defendant has offered himself
as a witness on his own behalf on this trial, and in considering
the weight and effect to be given his evidence, in addition to
noticing his manner and the probability of his statements taken
in connection with the evidence in the cause, you should consider
his relation and situation under which he gives his testimony,
the *consequences* to him relating from the result of this trial,
and all the *inducements* and *temptations* which would ordi-
narily influence a person in his situation.  You should care-
fully determine the amount of credibility to which his evidence
is entitled; if convincing and carrying with it a belief in its
truth, act upon it; if not, you have a right to reject it."  This
was sustained, the Supreme Court saying: "The instruction
of the court in relation to the credibility of the defendant,
who offered himself as a witness, was in all respects legal and
proper.  We do not agree with the learned counsel for the
defendant in holding that it is not competent for the court to
single out a particular witness and charge the jury as to his
credibility.  On the contrary, the less abstract the more
useful the charge.  Jurors find but little assistance in the
charge of a judge who deals only in the general and abstract
propositions which he supposes to be involved in the case, and
leaves the jury to apply them as best they may."  A similar

instruction was approved in *People* v. *Morrow*, 60 California, 142. See also *People* v. *Wheeler*, 65 California, 7,7; *People* v. *O'Neal*, 67 California, 378; *People* v. *Knapp*, 71 California, 1.

In *State* v. *Sterrett*, 71 Iowa, 386, 388, this instruction was given in reference to the testimony of the defendant: "He testifies as an interested witness, and from an interested standpoint, and as such you should consider his testimony; and when you do this, with all the surrounding circumstances developed by the evidence, give the testimony such weight, in connection with other evidence in the case, as you think it entitled to, and no more." In respect to it the Supreme Court observed: "But the fact that some interest of the witness is at stake may always be considered in weighing his testimony. If there is a question as to whether he is an interested witness, that question should be submitted to the jury; but, if there is no question as to the facts, the court may properly instruct the jury on the assumption that the interest exists, and may tell them that it should be considered in weighing the testimony. Now, the defendant in a criminal case who testifies in his own behalf is always an interested witness. It is impossible that it should be otherwise, and there can be no case in which it would not be proper for the jury to consider that fact in weighing his testimony. The court, therefore, properly assumed the existence of the fact, and directed the jury to consider it in determining the weight which should be given to defendant's testimony."

In *State* v. *Cook*, 84 Missouri, 40, 46, 47, 48, the jury were instructed: "That in determining what weight you give defendant's testimony, you should consider that he is the party accused and on trial in this cause." Objection was made to this on account of the word "should," as being mandatory rather than permissive, but the objection was overruled, the appellate court saying: "If the attitude of the accused, when he takes the witness stand, is in truth different from that of all other witnesses according to our laws, I am at a loss to perceive any error in the court so treating him, and in reminding the jury of such undoubted fact. This, I conceive, the court can do without subjecting itself to the criticism of singling out

a witness in its instructions for the purpose of throwing distrust upon his testimony. There can be no such other witness as the accused. The fact of which the jury is thus reminded is one which they ought to consider; and I am free to say that in my judgment no jury could faithfully discharge its sworn duty who fails to do so." See also from the same State the following authorities: *State* v. *Maguire*, 69 Missouri, 197; *State* v. *Zorn*, 71 Missouri, 415; *State* v. *McGinnis*, 76 Missouri, 326; *State* v. *Elliott*, 90 Missouri, 350.

In *People* v. *Calvin*, 60 Michigan, 113, 123, 124, the trial court charged the jury as follows: " I can't charge you, gentlemen, that you are bound to give the same weight to it that you are to that of a disinterested person. This man testifies as defendant, himself deeply interested, and has a motive for committing perjury or perverting facts which the other witnesses have not. It does not follow, therefore, that you must give the same weight to his testimony that you do to the testimony of any other witness, whether corroborated or uncorroborated." And the instruction was approved by the Supreme Court, the latter saying: "It was just and proper, in view of the request he had given in which no distinction was made between respondent's testimony and that of any other witness, that the jury should be instructed that in weighing and determining its truth they should take into consideration the interest he must necessarily have in the result of the trial."

In *Hirschman* v. *The People*, 101 Illinois, 568, 576, this instruction was given: " The court instructs the jury, as a matter of law, that in this State the accused is permitted to testify in his own behalf; that when he does so testify he at once becomes the same as any other witness, and his credibility is to be tested by and subjected to the same tests as are legally applied to any other witness, and in determining the degree of credibility that shall be accorded to his testimony, the jury have a right to take into consideration the fact that he is interested in the result of this prosecution, as well as his demeanor and conduct upon the witness stand and during the trial; and the jury are to take into consideration the fact, if such is the fact, that he has been contradicted by other

witnesses. And the court further instructs the jury, that if, after considering all the evidence in this case, they find that the accused has wilfully and corruptly testified falsely to any fact material to the issue in this cause, they have the right to entirely disregard his testimony, excepting in so far as his testimony is corroborated by other credible evidence." And it was approved with this comment: "We do not think that it can be fairly said that this instruction assumes that the defendant is contradicted, for that is expressly left a question to be determined by the jury. The jury were not bound to believe the evidence of the defendant any further than it may have been corroborated by other credible evidence, *Gainey* v. *The People*, 97 Illinois, 270, and we perceive no impropriety in saying so to them."

A similar instruction was sustained in *Rider* v. *The People*, 110 Illinois, 11. In *Chambers* v. *The People*, 105 Illinois, 409, the instruction was in this language: "The court instructs the jury, for the people, that they are not bound to believe the evidence of the defendant in a criminal case, and treat it the same as the evidence of other witnesses, but the jury may take into consideration the fact that he is defendant, and give his testimony such weight as, under all the circumstances, they think it entitled to." This also was sustained. *Bulliner* v. *The People*, 95 Illinois, 394; *Bressler* v. *The People*, 117 Illinois, 422. From other States these authorities may also be noticed: *People* v. *Petmecky*, 99 N. Y. 415; *Anderson* v. *The State*, 104 Indiana, 467; *Haines* v. *Territory*, 3 Wyoming, 168.

Until legislation of a recent date this court has had few criminal cases before it, and so has had little occasion to notice the limits to which a court may go in calling the attention of the jury to matters affecting the credibility of the defendant in a criminal case. In *Hicks* v. *United States*, 150 U. S. 442, 452, an instruction as to the effect of a conflict between the testimony of defendant and other witnesses was condemned, because of the assumption in it that the other witnesses were "telling the truth." In the same case another instruction, which seemed to press heavily upon the credence to be given to the testimony of the defendant, was referred to in these

words: "If this were the only objectionable language contained in the charge, we might hesitate in saying that it amounted to reversible error. It is not unusual to warn juries that they should be careful in giving effect to the testimony of accomplices; and, perhaps, a judge cannot be considered as going out of his province in giving a similar caution as to the testimony of the accused person. Still it must be remembered that men may testify truthfully, although their lives hang in the balance, and that the law, in its wisdom, has provided that the accused shall have the right to testify in his own behalf. Such a privilege would be a vain one if the judge, to whose lightest word the jury, properly enough, give a great weight, should intimate that the dreadful condition in which the accused finds himself should deprive his testimony of probability. The wise and humane provision of the law is that 'the person charged shall, at his own request, but not otherwise, be a *competent* witness.' The policy of this enactment should not be defeated by hostile comments of the trial judge, whose duty it is to give reasonable effect and force to the law."

The import of these authorities is that the court is not at liberty to charge the jury directly or indirectly that the defendant is to be disbelieved because he is a defendant, for that would practically take away the benefit which the law grants when it gives him the privilege of being a witness. On the other hand, the court may, and sometimes ought, to remind the jury that interest creates a motive for false testimony; that the greater the interest the stronger is the temptation, and that the interest of the defendant in the result of the trial is of a character possessed by no other witness, and is therefore a matter which may seriously affect the credence that shall be given to his testimony. The court should be impartial between the government and the defendant. On behalf of the defendant it is its duty to caution the jury not to convict upon the uncorroborated testimony of an accomplice. Indeed, according to some authorities, it should peremptorily instruct that no verdict of guilty can be founded on such uncorroborated testimony, and this because the induce-

ments to falsehood on the part of an accomplice are so great. And if any other witness for the government is disclosed to have great feeling or large interest against the defendant, the court may, in the interests of justice, call the attention of the jury to the extent of that feeling or interest as affecting his credibility. In the same manner in behalf of the government, the court may charge the jury that the peculiar and deep interest which the defendant has in the result of the trial is a matter affecting his credibility, and to be carefully considered by them.

Tested by these rules we see in the instruction objected to nothing of which complaint can reasonably be made. In the first part it lays down a general rule, applicable to all circumstances, and then in the latter part simply calls attention to the fact that the defendant has a deep personal interest in the result of the suit, and that that should be considered by the jury. There is no declaration nor intimation that the defendant has been untruthful in his testimony. There is only a reference to the jury of the matter of credibility coupled with the declaration that interest in the result is a circumstance to be weighed in its determination. This clearly is unobjectionable.

These are the only matters which are open for consideration. It is true that error is alleged in overruling a motion for a new trial, but such a ruling is not reviewable in this court. Neither can we take the statements made by the defendant in his motion as evidence that the matters thus stated did, in fact, occur at the trial. In order to authenticate such facts a bill of exceptions is necessary.

The judgment is

*Affirmed.*