## CONSIDINE v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. December 3, 1901.)

### No. 951.

1. **CRIMINAL LAW—FELONIES—BREAKING INTO POST OFFICE.**

    Rev. St. § 5478, making the breaking into a post office a crime punishable by a fine and by imprisonment at hard labor for not more than five years, creates a purely statutory offense "against the operation of the government," which was unknown to the common law, and is therefore not within the class of crimes known as felonies at the common law, and in the absence of any definition in the statute must be classed as a misdemeanor, and not a felony.

2. **JURY—PEREMPTORY CHALLENGES.**

    Under Rev. St. § 819, allowing a defendant charged with a felony ten peremptory challenges, and but three in other cases, a defendant prosecuted under Rev. St. § 5478, for breaking into a post office, is entitled to but three challenges.

3. **INDICTMENT—STATING PLACE OF OFFENSE.**

    An indictment charging that defendant "in the county .of Licking, in the state of .Ohio, * * * did then and there * * * break into a

building, then and there used in part as a post office of the United States, to wit, the post office at Granville," etc., is sufficiently specific in locating the place of the offense.

4. CRIMINAL LAW—REVIEW ON APPEAL—OBJECTIONS TO EVIDENCE.

To entitle a defendant to a review of rulings admitting evidence, the objections made must have been sufficiently specific to advise the trial court of the grounds of objection.

5. SAME—EVIDENCE—SECONDARY EVIDENCE.

In a prosecution for breaking into a post office the government introduced testimony tending to show that defendant and three others registered at a hotel in a city a few miles from the place where the offense was committed, on the preceding day, and went together to such place in the evening, the offense being committed that night. There was also evidence tending to show that defendant had registered for himself and another of the party under assumed names. *Held,* that proof of such registration was competent, as a circumstance bearing on the guilt of the accused, and that on proof that the leaf containing the names had been removed from the register by some person unknown, and could not be found, a tracing made by a government inspector before the mutilation of the register, and shown to be an accurate representation of the signatures, was admissible as secondary evidence.

6. SAME—EVIDENCE—PHOTOGRAPHS AS MEANS OF IDENTIFICATION.

On the trial of a person for a crime committed four years previously, photographs of defendant and his alleged confederates, shown to be good likenesses of them at the time the crime was committed, and to have been shown to witnesses for the government shortly after, who were then able to identify them as the likenesses of men who were seen together at the place of the crime on the evening previous to its commission, may properly be used by such witnesses to identify the defendant and those charged with him as the persons so seen.

7. SAME—POSSESSION OF STOLEN PROPERTY—EVIDENCE OF BURGLARY.

The possession of goods recently stolen is entitled to more or less weight as an inculpatory circumstance, depending on the facts of each case; and unless rebutted by the evidence, or the explanation of the accused, the jury may act upon it, not only where the accused is charged with the theft, but in a case in which he is charged with the burglary by which the theft was accomplished; and the term "recently," as used in such connection, is a variable one, dependent for its meaning in each case upon the other circumstances shown.

8. SAME.

On a prosecution of defendant for breaking and entering a post office in Ohio, it was shown that among other articles stolen therefrom were a number of blank money orders. It was also shown that defendant, a few weeks afterwards, procured a post office stamp to be made, together with type and pad for use with it. He was arrested in Chicago over two months after the robbery while attempting to pass one of such orders fraudulently stamped, and with a forged signature thereto, and another forged order and the stamp were found in his possession. *Held,* that such facts were competent evidence from which the jury were authorized to infer defendant's guilt of the crime charged, unless so explained as to show that his possession of the stolen property was innocent.

In Error to the District Court of the United States for the Southern District of Ohio.

Shay & Cogan, for plaintiff in error.

William E. Bundy, U. S. Atty., and Sherman T. McPherson, Asst. U. S. Atty.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. The plaintiff in error was convicted of the crime of unlawfully breaking and entering the post office at Granville, Ohio, on the night of October 15, 1896. The crime is defined by section 5478 of the Revised Statutes of the United States, which is as follows:

"Any person who shall forcibly break into, or attempt to break into any postoffice, or any building used in whole or in part as a postoffice, with intent to commit therein larceny or other depredation, shall be punishable by a fine of not more than one thousand dollars, and by imprisonment at hard labor for not more than five years."

Numerous exceptions were taken at the trial. We shall notice such as arise upon the record in a form permitting review of the same. At the trial the plaintiff in error insisted upon the right to challenge ten of the panel peremptorily. The court was of the opinion that, under the statute, the accused was entitled to only three challenges, and ruled accordingly. After the three challenges had been exhausted the fourth juror was challenged peremptorily by the accused, but the court overruled the challenge, and the juror was permitted to sit upon the trial. The right to challenge in cases of this character depends upon the construction to be given section 819 of the Revised Statutes, which reads, in part, as follows:

"When the offense charged is treason or a capital offense, the defendant shall be entitled to twenty and the United States to five peremptory challenges. On the trial of any other felony, the defendant shall be entitled to ten and the United States to three peremptory challenges; and in all other cases, civil and criminal, each party shall be entitled to three peremptory challenges."

A reading of this section makes it obvious that if the accused is on trial for a crime—other than treason, or a capital offense—which is a felony, he will be entitled to ten peremptory challenges, but when upon trial for a crime not a felony within the meaning of this section, he is entitled to only three peremptory challenges. It becomes important, therefore, to determine what is meant in the statute when it uses the word "felony." The term at the common law was defined to be any offense which worked forfeiture of lands, or goods, or both. Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89; Bannon v. U. S., 156 U. S. 464-468, 15 Sup. Ct. 467, 39 L. Ed. 494. While the common-law definition of the term in its origin was as above stated, under our system of jurisprudence the term can have but little meaning in its common-law signification, as under our system crimes do not work forfeiture of estate, provisions prohibiting that result being in most, if not all, of the state constitutions. In a majority of states the term has been defined to include offenses punishable by death or by imprisonment in the penitentiary. 12 Am. & Eng. Enc. Law (2d Ed.) p. 1032. As pointed out by Mr. Justice Brewer, in Reagan v. U. S., 157 U. S. 301, 15 Sup. Ct. 610, 39 L. Ed. 709, the common understanding of the term departs largely from the technical meaning it had at common law, owing to the want of application in this country of the former test as to what constituted a felony. The changed situation as to the punishment of crimes which formerly constituted

the test of what constituted felony in England, as well as in this country, is treated of by Bishop, in his work on Criminal Law, as follows:

"And the former test to determine what is felony, and what is not, has little or no practical use in either country. Consequently, where no statute has defined felony, we look into the books upon common-law crimes, and see what was felony, and what was not, under the older laws of England. And, though we have lost the old test, we hold that to be felony which was such when the test was operative." 1 Bish. Cr. Law (8th Ed.) § 615.

Congress would have relieved the situation of much uncertainty had the general practice in state legislation been followed in dividing crimes according to punishment between the grades of felonies and misdemeanors. As this has not been done, and as there is no definition of felony in the statutes of the United States, its meaning must be ascertained from the construction given to the term in federal decisions of authority. From such authorities certain general rules may be said to have been established. When a statute says that a certain offense shall be a misdemeanor that fixes its character for the purpose of determining the number of challenges to which the accused is entitled, regardless of the original character of the offense. Reagan v. U. S., 157 U. S. 301, 15 Sup. Ct. 610, 39 L. Ed. 709. When a statute uses a term such as "robbery" or "burglary," which had, at common law, a well-defined meaning, and was classed as a felony, the party is entitled to ten challenges. Harrison v. U. S., 163 U. S. 140, 16 Sup. Ct. 961, 41 L. Ed. 104. In that case the term "robbery" was used in the statute defining the offense, and it is held that to "rob" at common law was a felony, and that the word "rob" in the statute is used in the common-law sense. In a statute such as the one under consideration, where no definition of the term is inserted, in the absence of such definition the word is held to be used as designating such serious offenses as were formerly punishable by death, or by forfeiture of the lands or goods of the offender, and consequently classed as felonies at the common law. Bannon v. U. S., 156 U. S. 464, 15 Sup. Ct. 467, 39 L. Ed. 494; Ex parte Wilson, 114 U. S. 417-423, 5 Sup. Ct. 935, 29 L. Ed. 89. In one of the earliest and most comprehensive discussions of the subject (U. S. v. Coppersmith [C. C.] 4 Fed. 198), Judge Hammond summarizes his conclusion to be that the term "felony," as used in this statute, includes cases (1) where the offense is declared to be felonious, expressly or by implication; (2) where the offense is not defined by statute, but is designated by its common-law name a felony, known as such at the common law; (3) when congress adopts a state law as to an offense made by the law of the state a felony. The question in the present case is, therefore, reduced to this: Is the offense for which the accused was upon trial one which was classed at the common law as a felony? We are cited to ancient statutes, somewhat analogous, making it a felony to take from any dwelling house anything of the value of five shillings or over, but this statute has little similarity to the one under consideration. The present offense was created by the law of the United States, for the purpose of punish-

ing the offense of breaking or attempting to break into a post office or post office building with the intention to commit therein larceny or other depredation, and it is purely a statutory offense, not of common-law origin. This section, 5478, is found in title 70, Rev. St., styled "Crimes," and in chapter 5 of that title, defining offenses against the operation of the government. It is in the division of that chapter defining postal crimes. The object of the statute is to protect the postal service of the United States, and to secure the buildings used for such purpose from felonious entry with the criminal intent defined in the statute. It is this feature of the crime which gives the federal government the right to punish such offenses under the powers granted by the constitution. U. S. v. Campbell (C. C.) 16 Fed. 233; U. S. v. Williams (D. C.) 57 Fed. 201. This is in no sense a common-law offense, and was not of the crimes known as felonies, within the principles established in interpreting statutes using the term without further definition. It follows that the court committed no error in limiting the accused to three peremptory challenges.

2. It is argued that the indictment is insufficient in that it fails to state that the post office where the offense is alleged to have been committed is within the county of Licking. This objection is enforced with the citation of many authorities to support the familiar principle that the indictment must contain a sufficiently accurate and particular description of the offense to enable the accused to make his defense, to enable the court to determine that the facts charged constitute an offense within the meaning of the law, and to enable the accused to avail himself of the judgment as a bar to further prosecution for the same cause. Unquestionably the acts and intents which constitute the crime must be set forth with reasonable particularity of time, place, and circumstance. In the indictment in question the charge is "that James Considine, Andrew White, alias Charles Proctor, and Charles Gray, on, to wit, the fifteenth day of October, in the year of our Lord one thousand eight hundred and ninety-six, in the county of Licking, in the state of Ohio, in the circuit and Eastern division of the district aforesaid, and within the jurisdiction of this court, did then and there unlawfully, knowingly, willfully, and feloniously, forcibly break into a building then and there used, in part, as a post office of the United States, to wit, the post office at Granville, with intent then and there," etc. The objection seems to be to the stating that the post office is located at Granville, without stating that Granville is in the county of Licking. The acts are charged to have been committed in Licking county, and it is alleged that the accused "then and there broke and entered a building then and there used, in part, as a post office," to wit, the post office at Granville. This certainly locates the post office with such certainty as to leave no room for doubt as to the one intended to be described, and no room for another conviction for the same offense because of ambiguity in the terms of the indictment.

3. Objections were taken at the trial as to the admission of certain testimony. Many of these objections are so general and indefinite in their character that they cannot be noticed in this proceeding. It

has been so repeatedly held as to have become an established rule of practice in the courts of the United States that mere general objections to the introduction of testimony cannot be considered as to require only a restatement of the rule, without an elaborate citation of the cases. It is only fair to the trial court that counsel making numerous objections, which must be passed upon promptly, should apprise the court of the ground of objection, that it may be understandingly passed upon. Reilley v. U. S., 46 C. C. A. 25, 106 Fed. 896-905. In some instances the ground of admission was distinctly stated by the court, and his attention was, therefore, directed to the purpose for which the testimony was received in such manner that the rule requiring objections to be sufficiently explicit has no just application, and we shall notice exceptions reserved in that manner. At the trial the testimony tended to show that the defendant and three others had registered at a hotel in Newark, Ohio, which city is a few miles from Granville, where the post office was broken into upon the following night. The witnesses for the government testified that on the day of the commission of the crime the four persons who had been together at the hotel, occupying adjoining rooms, proceeded together to Granville the evening of the breaking into the post office; that the defendant registered at the hotel under an assumed name, and registered for another of the party in an assumed name. These circumstances were relevant in the chain of evidence relied upon by the government for the conviction of the accused. For this purpose it would have been competent to have offered the hotel register, when supplemented with proof that the defendant wrote the assumed names under the circumstances stated. The competency of the proof must depend upon proper foundation for its introduction. The government's testimony tended to show that Mr. Holmes, a government inspector, had visited the scene on the day after the crime had been committed and taken a tracing of the names from the register. He testified that he had experience in making such tracings, and there was other evidence tending to show that the tracing accurately represented the signatures. At the trial it was shown that the original page had been removed from the register by some person unknown, while it was in the possession of the hotel keeper, after the tracing had been made, and that the original page could not be found. The tracing, being produced, was admitted in evidence, as secondary evidence of the contents of the hotel register. It was not received, as counsel argues, as a standard of comparison to prove handwriting, but as tending to show that the defendant had registered with others at this hotel under assumed names the day before they proceeded together to the town where the crime was committed. This was a circumstance bearing upon the guilt of the accused, entitled to more or less importance as the jury might view it in reaching a conclusion. The register having been mutilated, and the page removed beyond the reach of the court, the secondary evidence of the tracing was competent to show its contents.

4. It is further urged that the court erred in permitting the use of certain photographs used by the government to enable the witnesses to identify the accused and his alleged confederates, Proctor and

Gray. These photographs were identified by a witness for the government as good likenesses of the parties named at and about the time the crime was committed, in October, 1896. The trial in the case under review did not take place until December, 1900, more than four years thereafter. The witnesses for the government testified that these photographs were shown them shortly after the post office was broken into, that they were enabled then to identify them as likenesses of the men seen at Newark and at Granville on the day the crime was committed. It being a relevant circumstance to show that the four were together at the time and under the conditions named, witnesses unacquainted with the parties might describe them, trusting to their memory and observation for the accuracy of their descriptions. Such descriptions are certainly far less reliable than a photograph, proven to be accurate by those acquainted with the subject, and which the identifying witness says truthfully represents to him the form and features of the person in question. Four years may have worked changes in the appearance of the person sought to be identified, as well as dimmed the recollection of the witness as to their characteristics. •It was.important that the witness give the jury truthful representations as to the identity of these persons at the time of their alleged offense. We perceive no reason why photographs, in connection with testimony from those acquainted with the persons that they are accurate representations, may not be used upon the trial as aids to identification. For this purpose only the photographs were permitted to be used at the trial. We think this use of them not erroneous. Cowley v. People, 83 N. Y. 464, 38 Am. Rep. 464; Com. v. Connors, 156 Pa. 147, 27 Atl. 366.

5. At the trial objections were taken to the admission of certain testimony as to the possession by the accused of certain of the stolen property, and the purchase of a money-order stamp, such as is used upon money orders in the post office of the United States. This testimony tended to show that among the articles stolen from the post office at Granville were a number of blank money orders. These orders were useless unless they could be put into circulation with the semblance of genuineness, signed and stamped as though used in the usual course of business. A witness engaged in the manufacture of rubber stamps of this description testified that on or about November 10th the accused purchased such a stamp from him, together with type and a pad for use with the stamp. Subsequently, on the 25th of December, he was arrested in Chicago, just after undertaking to pass one of these fraudulently stamped and counterfeited orders. In his possession was a small valise containing the outfit he had purchased from the witness the preceding month, and upon his person another one of the counterfeited orders. More cogent evidence of guilt could hardly be conceived. The unexplained possession of stolen property may constitute evidence of guilt, as an honest possession may usually be shown and the inference of guilt rebutted. In the present case the explanation of the possession of the property was consistent only with the intent to make a wrongful and criminal use of the stolen property. The means of putting the orders in shape to realize upon having first been obtained, they are fraudulently

stamped and signed and issued as genuine. It does not detract from the competency of this proof that it also tended to show the independent offense of forging and uttering the orders. These circumstances were important links in the chain tending to inculpate the plaintiff in error in the theft of the orders which followed the breaking and entry of the post office. In this connection we may notice the exceptions taken to the charge of the court upon the effect to be given this class of testimony. Upon this subject the court charges:

"Now, if you are satisfied, gentlemen, that he was, on the night this post office was broken into, in the town of Granville, and that he was passing under an assumed name, and that afterwards some of the property which was stolen on that occasion was found in his possession, then the jury might infer that he was one of the persons who broke into the post office and robbed it, unless he has explained his possession of the stolen property in such a way as to show that he was not, and could not have been, connected with the breaking of the post office."

This part of the charge was excepted to, and the court requested to charge upon this subject:

"The fact that stolen goods may have been found in the possession of the defendant, at Chicago, on the 25th of December, 1896, months after the breaking and entry of the post office in question, raised no presumption that the defendant committed the breaking and entering complained of, though the jury should take such fact into consideration in determining whether or not the defendant was present at Granville, Ohio, on the night in question."

The charge given must be read in the light of the circumstances of the case. There was absolutely no testimony tending to show other than a guilty possession and use of the stolen property. In saying that the accused must meet the strong criminating evidence produced by showing that he could not have been connected with the breaking of the post office, the court doubtless, as the context shows, had in mind the defense of alibi principally relied upon. For the charge immediately deals with that defense in a manner wholly unexceptionable. The unexplained possession of goods recently stolen is entitled to more or less weight as an inculpatory circumstance, depending upon the facts of each case, and unless rebutted by the evidence or explanation of the accused the jury may act upon it. Wilson v. U. S., 162 U. S. 619, 16 Sup. Ct. 895, 40 L. Ed. 1090. The term "recently" in this connection has no fixed and definite meaning, and is a variable term, depending upon other circumstances. Whart. Cr. Ev. § 759. There may be a theft of goods accompanied by such subsequent concealment of them, or they may be used for such purposes, that their possession several months after the theft may be presumptive evidence of guilt, to be weighed by the jury. As in the present case, the purchase of the stamp, the forging of the order, the attempt to pass them as genuine,—all tended strongly to rebut any inference of innocent possession of the stolen property, and gave little room for the claim that the possession was accounted for upon any theory consistent with innocence. The exception to the charge, in view of the request, seems to make the contention that the possession of the goods raised no inference that the accused was a participant in the breaking and entering of the post office. But where the evidence

tends to show that a defendant is guilty of a theft of goods, it also tends to show his guilt of the burglary by means of which the theft was committed. Com. v. McGorty, 114 Mass. 299.

Under the circumstances proven in this case, unexplained by the evidence for the accused, we think the court did not err in the charge given, or in refusing the request upon this proposition. Other errors are assigned, which are either not presented in the record, or were upon matters concerning which the court properly charged the jury, or were argumentative requests, not warranted by the testimony. We find no error in the record of which the plaintiff in error can complain, and the judgment will be affirmed.