UNITED STATES of America,
Appellee,

v.

John Humphrey SULLIVAN, Defendant-Appellant.

No. 340, Docket 28570.

United States Court of Appeals
Second Circuit.

Argued March 11, 1964.

Decided March 31, 1964.

Certiorari Denied June 22, 1964.
See 84 S.Ct. 1943.

C. J. Dick Towing Co. v. The Leo, 5 Cir., 1953, 202 F.2d 850, 854.

James M. LaRossa, Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty., for the Eastern District of New York, on the brief), for appellee.

Frank Serri, Brooklyn, N. Y. (James R. Waidley, Erie, Pa., on the brief), for defendant-appellant.

Before SMITH, KAUFMAN and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

Appellant was tried and convicted by a jury upon an information which alleged:

"On or about the 6th day of August 1962, within the jurisdiction of the Eastern District of New York, the defendant John Humphrey Sullivan, while aboard a Mohawk Air Line Aircraft, Flight No. 433, an aircraft which was being used for and employed in interstate air commerce, imparted and conveyed the false information that he then and there had a power T.N.T. bomb aboard in his luggage, which information concerned an attempt to do an act which would be a crime prohibited by Title 18 United States Code, Section 32, the said defendant John Humphrey Sullivan knowing the information to be false. (Title 18 United States Code, Section 35(a).)"

He was sentenced to a term of one year with the direction that he spend thirty days in jail and eleven months on probation. Appellant urges two grounds for reversal: Insufficiency of the information and the judge's charge to the jury. Recognizing the failure to raise either of these issues during the trial appellant nevertheless urges us to consider them and reverse. We find the claims to be without merit.

█ To be sufficient, the information need not allege specifically a threat to destroy the plane, nor is there any required allegation of malice or evil purpose. These points were clearly decided by this court in United States v. Allen, 2 Cir., 317 F.2d 777 (1963). We found support for this result in the legislative history of the act. The Committee on the Judiciary of the House of Representatives, in reporting the 1961 Amendment to 18 U.S.C. § 35, had this to say about the subsection here involved:

Subsection (a) would make it a misdemeanor for anyone to impart or convey information about a false bomb or bomb hoax, knowing the same to be false, even though such an act was done without malice. 2 U.S.Code Congressional and Administrative News, 87th Congress, First Session, 1961, p. 3053.

█ On the evening of August 6, 1962 aboard a Mohawk Airlines Flight airborne en route from New York to Burlington, Vermont and Plattsburgh, New York, appellant asked the airline stewardess if his bag was on board. She replied "Yes, it is." and he then said in effect that there was a T.N.T. bomb in it. While there is a dispute between the testimony of the stewardess, other government witnesses and the appellant as to the exact words used, there is no dispute as to his using the words "bomb" or "T.N.T." in his conversation with the stewardess. Whether or not he said there was a bomb in his bag aboard the plane was clearly a question for the jury.

█ The portions of the charge which appellant particularly assigns as prejudicial error are:

"In this case, the defendant testified. There was no obligation or compulsion of the defendant to testify, but when he takes the stand and does testify, he is tested by all the same rules and guides that any other witnesses are tested by. You know that, of course, the defendant is interested—vitally interested—in the outcome of a case, his case. That is not to say anyone who is interested in the case necessarily lies, but it is a fact you must take into consideration. A man that is interested in the outcome of a case might see things differently. You and I do it sometimes consciously and sometimes subconsciously. We see things

differently when we are interested in an event.

"If you find that any witness, and that includes the defendant, lied as to a material fact, you may disregard all the testimony that that witness gave on the theory that one who intentionally lies to a material fact is not worthy of belief and you may reject all of his testimony, or you may say, well, we feel he lied as to a material fact, and we will discard, reject that particular testimony, but we will believe the rest of his story because it seems to fit in with other testimony, and it has the ring of truth. There is supporting testimony corroborating testimony, so we will believe the rest. Now, this is just to underscore a wide discretion that the Jury has in assessing testimony, in weighing testimony. It is you and up to you alone to determine who lied; if anyone lied, what weight, what credence is to be given to the testimony.

\*　　\*　　\*　　\*　　\*　　\*

"It is not essential that every witness testify that the statement he allegedly made was the same statement. Inconsistencies are not unusual in testimony. You decide what inconsistencies are the product of unreliable or untruthful statements. You decide from all the testimony just what was said."

An instruction may properly point out the defendant's special interest in a case. Reagan v. United States, 157 U.S. 301, 15 S.Ct. 610, 39 L.Ed. 709 (1895); United States v. Paccione, 224 F.2d 801 (2 Cir. 1955). The instruction complained of did not exceed the limits of Reagan, and in the context of the charge as a whole could not have misled the jury as to the government's burden of proof. Cf. Bihn v. United States, 328 U.S. 633, 66 S.Ct. 1172, 90 L.Ed. 1485 (1946); Foley v. United States, 290 F.2d 562 (8 Cir. 1961). While appellant did not object to the charge when given, we have read the entire charge and find no error therein.

The judgment is affirmed.