**William RIVERA–VARGAS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ. 842–68.**

United States District Court
D. Puerto Rico.

Dec. 30, 1969.

1076

Santos P. Amadeo, San Juan, P. R., for plaintiff.

Charles Figueroa, Asst. U. S. Atty., San Juan, P. R., for defendant.

## OPINION AND ORDER

CANCIO, Chief Judge.

This case is before the Court by way of a motion under 28 U.S.C.A. § 2255, which requires us to make findings of fact and conclusions of law with respect to the issues presented. However, as there is no factual question presented, the following opinion shall serve in lieu of such findings. Morales v. United States, 187 F.2d 518 (1st Cir.1951); United States v. Nickerson, 211 F.2d 909 (7th Cir.1954).

On August 7, 1967, a grand jury brought a three-count indictment

against the petitioner, charging him with violations of 26 U.S.C. §§ 4742(a), 4744(a) (1), and 4744(a) (2). His trial was held on October 2, 1967 and he was found guilty by a jury on the same day. On October 13, 1967, petitioner was sentenced by this Court to imprisonment on each of the three counts, and is at present serving the sentence in a federal prison. Now he files the present motion asking the Court to "declare null and void his trial, sentence and conviction."

–I–

The petitioner's first allegation is directed at the following instruction given the jury at his trial:

> A defendant in a criminal case cannot be required to testify as a witness but, when as in this case, a defendant does take the stand and testifies, the credibility, that is, the believability, the weight and value of the defendant's testimony should be evaluated exactly as you would evaluate that of any other witness. *All of the matters suggested to you in that connection may properly be considered, including the personal interest of the defendant and what the defendant may have to gain or lose as a result of the case.* (Emphasis by petitioner.)

It is alleged that this instruction avoids and nullifies petitioner's trial and sentence for four reasons:

1. That it deprived petitioner of his liberty without due process of law in violation of the Fifth Amendment because, by injecting doubts in the mind of the jury as to the credibility of his testimony, it impaired the petitioner's guarantees of the presumption of innocence and reasonable doubt.

2. That as petitioner was specifically singled out as to his interest in the outcome of the trial, and allegedly, the same instruction was not applied to other witnesses in the case, his right to testify as a witness on his own behalf was impaired.

3. That this failure to put petitioner's testimony on the same footing as that of all other witnesses in regard to credibility deprived him of a fair and impartial trial as guaranteed by the Sixth Amendment.

4. That the instruction was a violation of the self-incrimination clause of the Fifth Amendment, as construed in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), because it is just as prejudicial to a defendant for the presiding judge to comment on the defendant's testimony as the judge in this case did, as it is for the prosecutor—or anyone else, for that matter—to comment on the defendant's failure to testify.

As to the first point, the fact that in our system of justice there is a presumption of innocence and that the state must prove its case beyond a reasonable doubt does not mean that the finder of fact—be it judge or jury—is to abdicate its ultimate responsibility of finding the truth. This obligation is not suspended when the defendant in a criminal case chooses to testify on his own behalf. Thus, the judge must put the jury in the position of being able to carry out their responsibility as finders of facts—as if they were the judge looking for the truth—and he does this by means of his charge to the jury. As we have seen, once the defendant chooses to waive his privilege not to testify, he is in the same position as any other witness, Reagan v. United States, 157 U.S. 301, 15 S.Ct. 610, 39 L.Ed. 709 (1895), and the judge has the duty of so instructing the jury.

The second and third points are partially answered by the text of the instruction. The allegation that the defendant was "specifically singled out as to his interest" in the outcome of the case, and that therefore his testimony was not put on the same footing as that of the other witnesses with respect to credibility, is not supported by the portion of the instruction the petitioner himself cites. First of all, the presiding judge specifically said that the credibility of the defendant's testimony should

be evaluated *exactly as that of any other witness*. Moreover, he added that what he had previously said "in that connection" with respect to the witnesses' testimony generally, also applied to the defendant's testimony. But in so doing, he added some remarks which undoubtedly are the ones on which petitioner relies the most:

> \* \* \* including the personal interest of the defendant and what the defendant may have to gain or lose as a result of the case.

Neither counsel for defendant nor the United States Attorney cite a single case really in point; that is, one in which an instruction similar to this one has been upheld or reversed when used by the federal courts. We have also been unable to find even one, apart from those cited in People v. Natal Rojas, 93 D.P.R. 844, 93 P.R.R. (1967). The only other cases we have found almost exactly like this one are from the Supreme Court of Puerto Rico. In People v. Febres, 90 P.R.R. (1964) and in People v. Morales, 39 P.R.R. 27, the Commonwealth high court had approved instructions similar to the one at bar.[1] But in the more recent case of People v. Natal Rojas, *supra,* it establishes a new rule:

> Although we approved instructions like this one in People v. Febres, 90 P.R.R. (1964), and in People v. Morales, 39 P.R.R. 27, 32, 33 (1929), we have concluded that it is not wise to continue in the future the practice of thus charging the jury since it is not proper nor necessary to so qualify the testimony of the defendant. To leave to the opinion of the jury the weighing of that testimony constitutes more sound justice. This ruling will only apply to persons whose trial shall be-

gin on a date subsequent to the date of this judgment.

After examining the circumstances of the instant case we do not believe that the objected instruction was so prejudicial as to give rise to the refusal of the judgment rendered in this case by the Superior Court, Arecibo Part, on January 21, 1965.

▆▆ Although their opinions in this type of cases are not binding on the federal courts that sit in the same geographical areas over which they exert jurisdiction, state courts may have some persuasive effect on federal judges facing identical or similar legal situations. In fact, we agree with the Supreme Court of Puerto Rico to the extent of believing that "[t]o leave to the opinion of the jury the weighing of [defendant's] testimony constitutes more sound justice," and also to the extent that we do not "believe that the objected instruction was so prejudicial as to give rise to the refusal of the judgment rendered \* \* \*". Even though the Puerto Rico Supreme Court directs lower courts of the Commonwealth to follow in the future the rule that "constitutes more sound justice," the language utilized fails to persuade us to disregard as unsound and unconstitutional a charge substantially the same as some that have repeatedly been suggested by the authorities[2] and used by federal district judges without any suggestion by higher courts as to its impropriety. I myself prefer to use a charge like this, without any reference to the "personal interest of the defendant and what the defendant may have to gain or lose as a result of the case," but its use by another judge who believes differently with the language in quotations, does not render his instruction unconstitutional in any man-

---

1. The charge given to the jury in People v. Natal Rojas, *supra,* was the following: In this case the defendant has testified; he has taken the witness stand. Therefore, his testimony should be taken into consideration as that of any other witness; taking into account,

of course, the interest that every defendant has in his own case.

2. e. g., Mathes & Devitt, Federal Jury Practice and Instructions, 1965, §§ 9.01 and 9.12.

ner whatsoever. It has so been held by the Supreme Court, Reagan v. United States, 157 U.S. 301, 15 S.Ct. 610, 39 L. Ed. 709; Schulze v. United States, 259 F. 189 (1959 CA 9); Caldwell v. United States, 338 F.2d 385 (8th Cir.), cert. den. 380 U.S. 984, 85 S.Ct. 1354, 14 L. Ed.2d 277.

Griffin v. California, *supra*, cited by the petitioner as authority for the proposition made in his fourth point, that the instruction violated his Fifth Amendment privilege against self-incrimination, is not in point. In that case, the prosecutor had commented adversely on the defendant's refusal to testify on his own behalf, and the trial court had given instructions to the jury that amounted to telling them that such silence was evidence of guilt. The Supreme Court held that the Fifth and Fourteenth Amendments forbids these actions.

 In the present case, the court's instruction did no more than place the defendant—*qua* witness—in the same position with respect to credibility as every other witness. That is the law. This did not "taint" the defendant's credibility; the instruction merely told the jury what the factors they were to consider in weighing his testimony. The trial judge adopted a neutral position and left it up to the jury to determine the credibility of this witness as they were left to determine the credibility of all others. As to the words he added in relation to defendant's interest in his case, our discussion of points two and three will suffice.

–II–

We turn now to petitioner's second main contention. As noted above, the

petitioner was tried, convicted and sentenced in October 1967. Since then— that is, on May 19, 1969—the Supreme Court of the United States has rendered its decisions in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, and United States v. Covington, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94. In these cases, the Supreme Court held that the Fifth Amendment's privilege against self-incrimination provides a complete defense to a prosecution for the violation of 26 U.S.C. § 4744(a) (2)[3] and 26 U.S.C. § 4744(a) (1), provided the plea was timely made.

Petitioner contends that because the prevailing constitutional doctrine (Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955) and United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953)) at the time of his trial was that it did not violate the Fifth Amendment's privilege against self-incrimination to prosecute for failure of the sections of the Marihuana Tax Act cited above, he now has the right, in the light of *Leary* and *Covington*, to attack collaterally the constitutional validity of his trial.[4] Thus, the question of whether the doctrine of these cases should be applied to one whose trial ended before they were decided is squarely presented to us for determination.

–A–

The courts of appeals do not seem to have had a chance as yet to rule on this question[5] and the Supreme Court has just recently granted certiorari in United States v. Buie, 407 F.2d 905 (2d Cir. 1969), and it might consider it therein. Thus, we have to fall back upon the criteria for retroapplicability of new con-

3. See footnote 3 at page 59 of 395 U.S., at page 1560 of 89 S.Ct.

4. Petitioner also refers us to Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889; Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d

923—all decided in 1968—and on which the *Leary* decision was based.

5. Two circuits are in conflict on the retroapplicability of the wagering tax cases, however. See footnote 4. Cf. Graham v. United States, 407 F.2d 1313 (6th Cir. 1969) and United States v. Lucia, 416 F.2d 920 (5th Cir. 1969).

stitutional doctrines set forth in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Johnson v. New Jersey, 384 U. S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); and Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).[6]

■■ From Linkletter v. Walker, *supra*, the first in a recent series of decisions in this area, we get our basic premise that "the effect of the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set 'principle of absolute retroactive invalidity'" (citing Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), at page 627 of 381 U.S., at page 1736 of 85 S.Ct.). From this, it follows that "in appropriate cases the Court may in the interest of justice make the rule prospective," 381 U.S. at 628, 85 S.Ct. at 1737. What is an "appropriate case" was explained in Tehan v. United States ex rel. Shott, *supra*. The Court in that case quoted from *Linkletter* in saying that resolution of the issue of retroactivity depends on three basic factors, to wit:

1. The prior history of the rule in question, i.e., the reliance placed upon it by courts and law-enforcement agencies.

2. Its purpose and effect.

3. Whether retrospective operation will further or retard the operation of the new rule.

■ From Johnson v. New Jersey, *supra*, we learn that "the choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved" nor is it "au-tomatically determined by the provision of the Constitution on which the dictate is based." 384 U.S. at 728, 86 S.Ct. at 1778. In Stovall v. Denno, *supra*, the Court admitted that though a conviction may be a gross miscarriage of justice, it does not follow that the new rule should be applied retroactively. 388 U.S. at 297, 87 S.Ct. 1967.

Finally, Desist v. United States, *supra*, is particularly important to our holding because it specifically concludes that "however clearly [the new constitutional rule announced] may have been foreshadowed, it was a clear break with the past."

## –B–

It might be argued that the doctrines cited above do not apply to the present case because the cases in which they were first set out (except perhaps the *Tehan* case) do not involve statutory invalidation and are merely vehicles for the creation of "new" constitutional rights. However, the statute in question here had received the benefit of judicial sanction and passed the test of constitutionality when under attack on the same ground as in *Leary*. Thus, while the *statute* was as a matter of fact declared unconstitutional, *Leary* also changed prevailing constitutional *doctrine*.

## –C–

As we have seen, we are not bound absolutely to apply *Leary* and *Covington* retroactively, but may instead decide whether this is an appropriate case for prospective-only application.

■ Generally, there are three possible *raisons d'etre* for constitutional guarantees in the criminal field. A particular guarantee may exist in order to protect the innocent from being found guilty; or its purpose may be to force public officials to refrain from using il-

6. See also De Stefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) (right to jury trial); Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L. Ed.2d 212 (1968) § 605 of Fed.Com-munications Act); and Kaiser v. New York, 394 U.S. 280, 89 S.Ct. 1044, 22 L.Ed.2d 274 (1969) (wiretapping and § 605) which deal with recent applications of the various criteria.

legal methods; or its purpose may be to protect the human dignity of the accused. It would seem logical to assume that retroactivity applies only to those guarantees based on the first of the three reasons. With respect to the last two, the damage has been done and cannot be undone, but as to the first, retroactive application of the new theory means that an innocent person will be released from prison.

■ It is also logical to reason that "the basic purposes that lie behind the privilege against self-incrimination do not relate to protecting the innocent from conviction, but rather to preserving the integrity of a judicial system."[7]

Thus having met the first criterion, we turn now to the second: the prior history of the rule in question, i.e., the reliance placed upon it by law-enforcement officials. There must have been hundreds, if not thousands, of convictions based on this statute, quite a few of them in this jurisdiction alone. Past reliance is, thus, strongly against retroactive application.

■ Closely related to the second factor is the question of the effect retroactive application would have on the administration of justice. We have already stated that there has been a great number of convictions obtained under the Act. To apply the new rule to these convictions would mean, at the very least, that a review of each conviction would have to be made to determine the extent to which it was based on the failure to comply with the order form requirement, with all that would imply to the penal, as well as judicial, system. Because of this and the other factors mentioned, we cannot give retroactive application to the Leary and Covington rules.

–III–

The Court concludes that no error was made in the instructions to the jury and that the petitioner's conviction under sections 4744(a) (1) and (2) must stand. Accordingly, the motion under 28 U.S.C.A. § 2255 is hereby denied.

It is so ordered.

---

7. Tehan v. United States ex rel. Shott, 382 U.S. 406, 415, 86 S.Ct. 459, 464, 15 L.Ed.2d 453 (1966).