NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-2504

_____

UNITED STATES OF AMERICA

v.

CHESNEY JONES,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No.) 07-cr–0208-1
District Judge: Honorable William W. Caldwell

_____

Submitted Under Third Circuit LAR 34.1(a)
on March 23, 2010

Before:  RENDELL, FUENTES, and JORDAN, <u>Circuit Judges</u>.

(Filed March 30, 2010)

_____

OPINION OF THE COURT

_____

RENDELL, Circuit Judge.

Chesney Jones appeals from a jury verdict finding her guilty of: unlawful possession and distribution of at least 50 grams of crack cocaine, and at least 5 kilograms of cocaine hydrochloride; interstate travel in aid of racketeering; making false statements; and conspiracy to distribute drugs. Jones was sentenced to a total of 25 years' imprisonment. Jones contends that the District Court erred by admitting into evidence recordings of conversations in violation of the Confrontation Clause, admitting text messages into evidence without allowing Jones to examine the phone on which these messages were stored, and giving an improper jury instruction regarding Jones' testimony. We write only for the parties and assume their familiarity with the factual and procedural history of this case. We will affirm.

After her arrest for a parole violation, Jones asked to speak to Drug Enforcement Agents and admitted that she was a drug "runner" and had supplied multiple shipments of cocaine hydrochloride to a buyer, Lance Harper, for approximately one year. Jones agreed to cooperate with law enforcement and made recorded phone calls to Harper and other individuals involved in drug trafficking. During one recorded meeting with Harper, Jones attempted to tip him off that she was cooperating with law enforcement. Jones testified at her trial, retracted everything she had told agents, and denied being involved with drug trafficking.

## I.  Recordings

Jones contends that consensually recorded conversations between herself and her alleged co-conspirators should not have been admitted into evidence because they are testimonial and therefore violate the Confrontation Clause, according to *Crawford v. Washington*, 541 U.S. 36 (2004).  In *Crawford*, the Supreme Court held that out-of-court statements that are testimonial are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a previous opportunity to cross-examine the witness. 541 U.S. at 68.  However, we have held that "'party admissions and co-conspirator portions' of disputed tape recordings are 'nontestimonial.'" *United States v. Bobb*, 471 F.3d 491, 499 (3d Cir. 2006) (quoting *United States v. Hendricks*, 395 F.3d 173, 183-84 (3d Cir. 2005)).  The Confrontation Clause does not bar the admission of nontestimonial statements if they are "subject to a firmly rooted hearsay exception." *Albrecht v. Horn*, 485 F.3d 103, 134 (3d Cir. 2007).  Therefore, admitting the recorded conversations of Jones and her co-conspirators into evidence did not violate the Confrontation Clause.

Jones next argues that the conversations were hearsay and the District Court erred in admitting the conversations under Federal Rule of Evidence 801(d)(2)(E).  Under Rule 801(d)(2)(E), out of court statements by a co-conspirator are admissible if the preponderance of the evidence shows that (1) a conspiracy existed; (2)  that the defendant and the declarant were members of the conspiracy; and (3) the statement was made in furtherance of and in the course of the conspiracy.  *Bobb*, 471 F.3d at 498.  Jones urges

3

that because the recordings were made after she was arrested and while she was cooperating with law enforcement, they cannot be in furtherance of or during the course of a conspiracy because the conspiracy had ended. However, the government provided evidence that during Jones' conversations with Harper she attempted to warn him that they were being recorded - therefore, the conspiracy had not ended and the statements were made in furtherance of the conspiracy. The District Court did not abuse its discretion in allowing the recorded statements to be admitted into evidence.

## II. Text Messages

Jones next contends that the District Court erred by admitting text messages found on her cell phone but not allowing Jones to personally examine the phone during trial. While the government was presenting its case at trial, Jones asked if she could examine her cell phone to attempt to prove that text messages to Harper were created after she was in custody and therefore must have been planted by government agents. Jones' counsel had previously been given access to the phone and had seen the text messages at issue. A. 225-29. The government objected to Jones handling the phone because of "grave concerns about placing a valuable piece of evidence into the hands of the defendant to personally manipulate this." *Id*. Instead, the government offered to send the phone to a laboratory where an expert could examine it to determine when the text messages were written. *Id*.

4

On appeal, Jones urges that the government's refusal to allow her to personally examine the phone during the trial is a *Brady* violation. *Brady v. Maryland*, 373 U.S. 83 (1963), requires that prosecutors disclose potentially exculpatory evidence to the defense. Here, where prosecutors allowed Jones' counsel to access the phone and view the text messages, and, when Jones asked to handle the phone during the trial, offered to have the phone examined by an expert, there was no *Brady* violation.

## III. Jury Instruction

Lastly, Jones claims that the District Court erred in giving a jury instruction that unfairly singled out Jones' testimony as potentially biased. The District Court instructed the jury that:

> the defendant, Chesney Jones, has taken the witness stand. You should examine and evaluate her testimony just as you would the testimony of any witness. It is for you to decide to what extent, if at all, Ms. Jones's interest in the result of her prosecution may have affected or colored her testimony.

A. 353.

In the District Court's general charge regarding witness credibility, it said "[t]he parties themselves, that is the government and the defendant, have an obvious interest [in the outcome of the case]." A. 352. Therefore, it was unnecessary for the Court to reiterate that Jones' had a personal interest in the outcome of case in a separate instruction. While such an instruction that singles out the defendant's interest in the case is not advisable, we find that here it did not constitute reversible error.

5

In *Reagan v. United States*, 157 U.S. 301, 304-05 (1895), the Supreme Court approved the following instruction:

> You should especially look to the interest which the respective witnesses have in the suit, or in its result. Where the witness has a direct personal interest in the result of the suit, the temptation is strong to color, pervert, or withhold the facts. The law permits the defendant, at his own request, to testify in his own behalf. The defendant here has availed himself of this privilege. His testimony is before you, and you must determine how far it is credible. The deep personal interest which he may have in the result of the suit should be considered by the jury in weighing his evidence, and in determining how far, or to what extent, if at all, it is worthy of credit.

In *Reagan,* the Court held that a trial court may instruct the jury that they may consider the defendant's "deep personal interest" in the outcome of the case, but cannot declare or imply that the defendant has testified falsely. 157 U.S. at 311. The instruction here did not imply that Jones had testified falsely and therefore is not reversible error under *Reagan*.[1]

For the foregoing reasons we will AFFIRM Jones' convictions and sentence.

---

[1] We note that several courts of appeals have expressed concern as to the use of instructions that single out the defendant's interest in the case even though they don't constitute reversible error. *See United States v. Gaines*, 457 F.3d 238, 245 (2d Cir. 2006); *United States v. Bear Killer,* 534 F.2d 1253, 1259-60 (8th Cir. 1976);*United States v. Saletko*, 452 F.2d 193, 198-99 (7th Cir. 1971).