(Slip Opinion) OCTOBER TERM, 2025 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## VILLARREAL *v*. TEXAS

CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF TEXAS

No. 24–557.   Argued October 6, 2025—Decided February 25, 2026

David Villarreal's murder trial culminated with his own testimony. That testimony was interrupted by a 24-hour overnight recess, during which the trial judge instructed Villarreal's attorneys not to "manage his testimony." 707 S. W. 3d 138, 142. The judge clarified, however, that Villarreal was not prohibited from talking to his attorneys and recognized Villarreal's constitutional right to confer about certain topics, such as possible sentencing issues. Villarreal resumed his testimony 24 hours later and was subsequently convicted of murder. On appeal, the Texas Court of Criminal Appeals concluded that the order was a permissible exercise of the trial court's discretion.

*Held*: A qualified conferral order that prohibits only discussion of the defendant's testimony for its own sake during a midtestimony overnight recess permissibly balances the defendant's Sixth Amendment right to counsel against the burden of offering unaltered trial testimony and does not violate the Constitution. Pp. 4–14.

   (a) The Sixth Amendment guarantees as "fundamental" a criminal defendant's right to consult with counsel. *Powell* v. *Alabama*, 287 U. S. 45, 68. When a defendant takes the witness stand, however, he "[a]ssum[es] the position of a witness," with its attendant "criticisms and burdens." *Reagan* v. *United States*, 157 U. S. 301, 305. These include the inability to receive advice from counsel aimed at "influenc[ing] the testimony in light of the testimony already given." *Geders* v. *United States*, 425 U. S. 80, 87. In *Geders*, the Court held that a judge may not entirely prevent a testifying defendant from conferring with his lawyer during an overnight recess, reasoning that a defendant differs from a normal witness because he has matters "other than his own testimony" to discuss, such as "tactical decisions," "strategies,"

and the "significance of the day's events." *Id.*, at 88. In *Perry* v. *Leeke*, 488 U. S. 272, 283–284, however, the Court held that a judge may prevent a testifying defendant from conferring with his lawyer during a brief daytime recess because "there is a virtual certainty that any conversation" during such a recess "would relate to the ongoing testimony," and a defendant does not have a protected Sixth Amendment right to discuss ongoing testimony with his lawyer. Pp. 4–7.

(b) The line between *Geders* and *Perry* is substantive, not merely temporal. *Perry*'s premises are content based: A testifying defendant has a constitutional right to consult about matters such as "the availability of other witnesses, trial tactics, or . . . plea bargain[ing]," 488 U. S., at 284, but where no nontestimony topics are involved, the Sixth Amendment provides no constitutional right to consultation during breaks in testimony, *id.*, at 281. A defense attorney may rehearse a client's testimony before the client takes the stand and debrief testimony after the client leaves the stand for good. But while the defendant is sworn in as a witness, consultation about the testimony itself—rather than incidental discussion of testimony in service of other protected topics—sheds its constitutional protection. This conclusion follows from the Court's precedents as well as from the basic principles underlying conferral orders. Conferral orders embody the traditional practice of witness sequestration, refashioned to accommodate the special protections of a defendant; a rule prohibiting discussion of testimony for its own sake mimics sequestration within constitutional bounds and advances the central truth-seeking function of the trial, see *Portuondo* v. *Agard*, 529 U. S. 61, 73. Pp. 7–10.

(c) The trial judge's order here prohibited Villarreal's lawyers from "*managing*" his "ongoing testimony." This order permissibly balanced the truth-seeking function of the trial against Villarreal's right to discuss protected topics with his lawyers—things like trial strategy, whether to consider a guilty plea, and factual information crucial to tactical decisions. A court cannot prohibit a defendant from obtaining his attorney's advice on whether and why he should consider a guilty plea, even if the "why" includes the impact of ongoing testimony on the trial's prospects. But it may, like the court here did, prohibit discussion of testimony as such. Pp. 10–12.

(d) The Court rejects Villarreal's request for a bright-line rule permitting no restrictions overnight to prevent chilling of protected discussion. Courts of appeals that have prohibited uncompromising no-testimony-discussion orders reasonably feared that directives preventing all discussion of testimony would be impermissibly overbroad. An order prohibiting only discussion of "nothing but the testimony," *Perry*, 488 U. S., at 284, does not present the same concern. Consultation about testimony itself—practicing it, debriefing it, and the like—is a

Syllabus

recognized, distinct tool in every trial lawyer's preparatory arsenal, and lawyers ordered to sheathe that tool overnight will have no difficulty doing so.  Pp. 12–13.

707 S. W. 3d 138, affirmed.

JACKSON, J., delivered the opinion of the Court, in which ROBERTS, C. J., and ALITO, SOTOMAYOR, KAGAN, KAVANAUGH, and BARRETT, JJ., joined.  ALITO, J., filed a concurring opinion.  THOMAS, J., filed an opinion concurring in the judgment, in which GORSUCH, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

―――――――

No. 24–557

―――――――

## DAVID ASA VILLARREAL, PETITIONER *v.* TEXAS

*ON WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF TEXAS*

[February 25, 2026]

JUSTICE JACKSON delivered the opinion of the Court.

A criminal defendant has many unassailable rights during his trial, including the right not to testify and the right to access his lawyer. But if and when a defendant takes the witness stand in his own defense, his status shifts. He does not shed his rights as a criminal defendant. But he does assume some of the burdens of a testifying witness.

This case requires us to navigate a tension between one of those rights and one of those burdens. The right is a defendant's entitlement to the advice of counsel unrestricted by judicial interference. The burden is a witness's responsibility to offer sworn testimony uninfluenced by a lawyer's midstream tinkering. Both are longstanding and fundamental, as the right forms the heart of the Sixth Amendment's right to counsel and the burden serves the central truth-seeking function of a trial.

We have twice addressed this tension in the context of a trial recess that interrupts a defendant's testimony. We held in *Geders* v. *United States*, 425 U. S. 80 (1976), that a court *may not* prevent a testifying defendant from conferring with his lawyer during an overnight recess. We held in *Perry* v. *Leeke*, 488 U. S. 272 (1989), that a court *may* prevent a testifying defendant from conferring with his

lawyer during a brief daytime recess. The trial courts in both cases had imposed unqualified bans that separated client from counsel entirely.

This case presents a third scenario: an overnight recess that interrupts a defendant's testimony—but one in which the court allows counsel to speak with his client while limiting the content of the discussion. The court here prohibited the defendant's lawyer only from "managing" the defendant's testimony; it permitted all other discussion. Because we conclude that this qualified conferral order permissibly balanced the right to counsel against the burden of offering unaltered trial testimony, we affirm.

I

David Villarreal's murder trial culminated with his own testimony. The only defense witness, Villarreal testified that he stabbed the victim in self-defense while the victim was trying to choke him to death.

A 24-hour overnight recess interrupted Villarreal's direct testimony. Before the recess, the trial judge gave Villarreal the instruction that has become the centerpiece of this appeal. Apparently concerned that Villarreal's counsel might coach Villarreal to adjust the remainder of his testimony, the judge sought to narrow Villarreal's ability to confer with his attorneys overnight.

The judge and Villarreal's counsel engaged in an extended back-and-forth over the scope of the order. In the end, the trial judge left Villarreal's attorneys with this directive: "[A]sk yourselves before you talk to [Villarreal] about something, is this something that—manage[s] his testimony in front of the jury?" 707 S. W. 3d 138, 142 (Tex. Crim. App. 2024). Addressing Villarreal, the judge clarified: "I'm not telling you, you can't talk to them." *Ibid.* Indeed, the judge recognized that Villarreal had "a constitutional right to confer" with his attorneys about certain topics. *Ibid.* "For instance, suppose . . . you need to start

talking . . . about possible sentencing issues, you can do that." *Ibid.* But to the extent Villarreal's lawyers wished to "manage" his testimony, the judge placed that off limits. *Ibid.*

Villarreal's lawyers objected under the Sixth Amendment but indicated that they understood the order's scope. *Id.*, at 142–143. Villarreal resumed his testimony 24 hours later and was subsequently convicted of murder; he received a 60-year sentence. *Id.*, at 140, 143. At no point did Villarreal or his attorneys suggest that the qualified conferral order had inhibited any conversation they wished to have. See *id.*, at 143.

## II

The Court of Appeals of Texas affirmed Villarreal's conviction, see 596 S. W. 3d 338 (2019), as did the Texas Court of Criminal Appeals (TCCA), see 707 S. W. 3d 138. The TCCA understood the challenged conferral order as an effort to "preserv[e] the truth-seeking function of trial" and thus construed the order as prohibiting Villarreal's lawyers from "*managing*" his "ongoing testimony." *Id.*, at 146. In the TCCA's view, the order was a permissible exercise of the trial court's discretion because it "only restricted discussions of [Villarreal's] ongoing testimony and nothing else." *Ibid.* Although a defendant must be able to confer with counsel about the "effects" of his testimony, the TCCA reasoned, a trial court may prohibit more explicit discussion of the defendant's testimony itself. *Id.*, at 145. The TCCA explained that a trial court may, for example, order defense counsel not to "coach the testimony to course-correct a disastrous direct examination to brace against the impact of the upcoming cross-examination." *Ibid.*

In separate writings, multiple TCCA judges expressed hesitation with the "murky" line that emerges from *Geders* and *Perry*. See 707 S. W. 3d, at 147–148 (Yeary, J., concurring). They worried that confusion about the proper scope

of conferral orders risks trenching on a defendant's Sixth
Amendment right to obtain full, unqualified advice on mat-
ters key to the effective assistance of counsel, such as
whether to plead guilty. See *id.*, at 148 (same); *id.*, at 150
(Keel, J., concurring).

Those judges are among many who have struggled with
the permissibility of similar orders and who have diverged
both in their bottom-line conclusions and in their reason-
ing.[1]  We granted certiorari to clarify the Sixth Amend-
ment's boundaries. 604 U. S. 1241 (2025).

## III

The Sixth Amendment guarantees as "fundamental" a
criminal defendant's right to consult with his counsel. See,
*e.g.*, *Powell* v. *Alabama*, 287 U. S. 45, 68 (1932).  When a
defendant opts to take the witness stand, however, he
"[a]ssum[es] the position of a witness," with its attendant
"criticisms and burdens." *Reagan* v. *United States*, 157
U. S. 301, 305 (1895).  One such burden: Courts may limit
advice from counsel aimed at "influenc[ing] the testimony
in light of the testimony already given." *Geders*, 425 U. S.,
at 87.

During a normal trial recess—one that does not interrupt
the defendant's testimony—no such influence is threatened
and the Constitution plainly protects a defendant's right to
access his counsel without judicial interference.  But during
a midtestimony recess (when the defendant not only enjoys

---

[1] Compare, *e.g.*, *Martin* v. *United States*, 991 A. 2d 791, 794–795, and
n. 13 (D. C. 2010) (concluding that an order banning discussion of testi-
mony during an overnight recess violated the Sixth Amendment and col-
lecting supporting cases), with *Beckham* v. *Commonwealth*, 248 S. W. 3d
547, 553 (Ky. 2008) (allowing an order "permitting the defendant to have
contact with his attorneys during an overnight recess while limiting that
contact by telling the attorneys to not discuss their client's ongoing tes-
timony").  See also *United States* v. *Triumph Capital Group, Inc.*, 487
F. 3d 124, 127, 133 (CA2 2007) (noting that "courts have struggled to
define the constitutional line between *Geders* and *Perry*").

the Sixth Amendment's protection but also bears a witness's burdens), it is less clear whether and to what extent the Sixth Amendment permits judge-imposed restrictions on the defendant's access to counsel.

This Court first encountered that question in *Geders*. An overnight recess divided Geders's direct testimony from his cross-examination. Before the recess, the judge ordered Geders not to discuss the case overnight with anyone. 425 U. S., at 82–83, and n. 1. Geders's attorney objected to this absolute conferral ban, explaining that he believed his client had a right to confer with him "about matters other than the imminent cross-examination." *Id.*, at 82.

This Court agreed. The trial judge's order, we explained, was a species of the traditional practice of witness sequestration. "Applied to nonparty witnesses," the practice is unobjectionable and "within sound judicial discretion." *Id.*, at 88. But Geders "was not simply a witness; he was also the defendant." *Ibid.* And whereas "[a] nonparty witness ordinarily has little, other than his own testimony, to discuss with trial counsel" during an overnight recess, the same is not true of a defendant: "It is common practice during such recesses for an accused and counsel to discuss the events of the day's trial." *Ibid.* Indeed, we explained,

> "[s]uch recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events." *Ibid.*

For those reasons, we held in *Geders* that the Sixth Amendment precludes the judge from keeping a defendant and his lawyer apart during that crucial interlude in the defendant's testimony. We observed that concerns about

"the problem of possible improper influence on testimony or 'coaching' of a witness" can be addressed without so blunt an instrument as a complete overnight barrier. *Id.*, at 89. And, "[t]o the extent that conflict remains" between the Constitution and the interest in untutored cross-examination, we concluded that "the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel." *Id.*, at 91.

*Geders* explicitly reserved judgment regarding the constitutionality of a shorter conferral restriction, like one governing "a brief routine recess during the trial day." *Id.*, at 89, n. 2. But when that question arose 13 years later in *Perry*, we upheld the restriction, emphasizing a defendant's shift in status when he takes the stand. "[B]efore he begins to testify," we reasoned, a defendant "has an absolute right" to consult with his lawyer. 488 U. S., at 281. When he becomes a witness, however, a competing duty arises: the duty to advance "the truth-seeking function of the trial." *Id.*, at 282. That function, we explained, is best served when testimony is unaided by "an opportunity to consult with third parties," such as lawyers, about the course of one's testimony once it has begun. *Ibid.*

Then, *Perry* made a key observation: As a practical matter, a truth-undermining consultation is exactly the kind of communication likely to happen during a brief daytime recess. That is, during a brief recess, "there is a virtual certainty that any conversation between the witness and the lawyer would relate to the ongoing testimony." *Id.*, at 283–284. Notably, this fact differentiated the *Perry* recess from the *Geders* one. When (as in *Geders*) the recess stretches overnight, the discussion will likely "encompass matters that go beyond the content of the defendant's own testimony—matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain." *Perry*, 488 U. S., at 284.

*Perry* therefore held that what the Sixth Amendment forbids overnight (a total conferral ban), it permits during a brief daytime recess. *Perry* also suggested that, during such a brief recess, trial courts might opt for a lesser included restriction—one that would permit consultation on protected topics "but forbid discussion of ongoing testimony." *Ibid.*, n. 8.

We acknowledged in *Perry* that "the line between the facts of *Geders* and" *Perry* "is a thin one." *Id.*, at 280. It is nonetheless "a line of constitutional dimension." *Ibid.*

## IV

## A

Before us, Villarreal and Texas place that line along different axes. For Villarreal, the line is temporal. Villarreal concedes that, during a brief daytime recess, a defendant has no right to confer. But during an overnight recess, Villarreal insists, the conferral right is absolute and unqualified; that is, an overnight recess is different in kind such that the Sixth Amendment admits no restriction.

For Texas, the line is substantive. The reason *Perry* held a total nonconferral order permissible during a brief daytime recess, Texas argues, is because of the unprotected *content* of discussion that presumably occupies such a recess, not simply because of the amount of time the recess lasts. And if that is so, then a court order prohibiting only unprotected content (like, Texas posits, the one here) comports with the Sixth Amendment.[2]

We conclude that Texas is correct. Underlying *Perry* are two premises. One is factual and the other legal, but both are content based. First, while *Perry* recognizes that a testifying defendant has a constitutional right during a midtestimony recess to consult with his lawyer about a

---

[2] The lower courts have likewise diverged with respect to this subsidiary time-versus-content question. See *Serrano* v. *Fischer*, 412 F. 3d 292, 299–300 (CA2 2005) (Sotomayor, J.) (collecting cases).

wide range of topics—"the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain," *id*., at 284—it posits that a short break in a defendant's appearance on the witness stand is unlikely to feature such topics. Instead, such a pause will likely contain discussion of "nothing but the testimony." *Ibid.* So, then, *Perry*'s second (correlative) premise emerges: A midtestimony defendant does not have a protected Sixth Amendment right to discuss his ongoing testimony with his lawyer. Put differently, where no nontestimony topics are involved, the Sixth Amendment provides no constitutional right to consultation during breaks in the defendant's testimony. *Id*., at 281.

In less prominent form, the same content-based premises undergird *Geders*. The Court there explained that a defendant differs from a normal witness because the defendant has matters "*other than* his own testimony" to discuss. 425 U. S., at 88 (emphasis added). And Geders's lawyer apparently shared that same assumption, because he insisted that he and his client must be permitted to confer "about matters *other than* the imminent cross-examination." *Id*., at 82 (emphasis added).

Villarreal's hardline position—that the Sixth Amendment permits no restriction of a defendant's consultation right during an overnight recess—thus fails to account for the content-related premises underlying *Geders* and *Perry*. It is inconsistent too with another such premise: *Perry*'s explanation that something shifts "when a defendant becomes a witness." 488 U. S., at 281; see also *id*., at 282 ("[W]hen he assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well"). Villarreal says the shift merely allows a judge to prohibit "impermissible coaching," which Villarreal defines as soliciting perjury. Tr. of Oral Arg. 37. But, of course, soliciting perjury is *always* improper; a judge's

instruction to avoid it would raise no more eyebrows at the outset of trial than leading into a midtestimony recess. See *Nix* v. *Whiteside*, 475 U. S. 157, 166 (1986). On Villarreal's view, the defendant's taking the witness stand works no change in the judge's discretion to preserve "the truth-seeking function of the trial." *Perry*, 488 U. S., at 282.

By contrast, Texas's reading—and now ours—gives content to *Perry*'s framework: What shifts is the protection afforded to a certain subset of consultation. That subset, we hold, is discussion of testimony for its own sake—what *Perry* called "nothing but the testimony." *Id.*, at 284. A defense attorney may rehearse her client's testimony before her client takes the witness stand. See ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 508: The Ethics of Witness Preparation 1–4 (Aug. 5, 2023) (Formal Opinion 508). And a defense attorney may debrief her client's testimony after her client leaves the witness stand for good. Such discussion of testimony *qua* testimony is entirely proper and the consultation that enables it is constitutionally protected before the defendant's testimony begins and after it concludes. But for the duration of the defendant's time on the stand, consultation about the testimony itself—rather than incidental discussion of testimony in service of protected topics—sheds its constitutional protection.

This means that, as even Texas acknowledges, a court cannot prohibit a lawyer from asking his client about a new potential witness or a piece of evidence mentioned for the first time during the defendant's testimony, or a defendant from asking his lawyer about compliance with the court's evidentiary rulings. See Brief for Respondent 27–28. What it may prohibit is discussion of testimony *for its own sake*. Such discussion threatens to shape the defendant's testimony and undermine the trial's search for the truth.

This rule follows naturally from our precedents and the principles underlying them; in particular, the recognition

that conferral orders are "a corollary" of the traditional practice of witness sequestration, refashioned to accommodate the special protections of a defendant. *Perry*, 488 U. S., at 281–282. Witness sequestration (the exclusion of a witness from the courtroom prior to his testimony) prevents the witness from "adapt[ing] his testimony . . . to victory rather than to veracity, so as to meet the necessities as laid open by prior" testimony. 6 J. Wigmore, Evidence §1869, p. 502 (3d ed. 1940); accord, *Perry*, 488 U. S., at 281–282. Pure sequestration is, of course, incompatible with a defendant's right to attend his trial and to consult his attorney. See *Geders*, 425 U. S., at 88; *Brooks* v. *Tennessee*, 406 U. S. 605, 607 (1972). But a rule prohibiting the discussion of testimony for its own sake mimics sequestration within constitutional bounds. It restrains real-time feedback aimed at chameleonic adjustments in the defendant's testimony and thus (like true sequestration) advances "the central function of the trial, which is to discover the truth." *Portuondo* v. *Agard*, 529 U. S. 61, 73 (2000).

In short, we agree that "[t]he difference between *Perry* and *Geders* is not the quantity of communication restrained but its constitutional quality." *United States* v. *Padilla*, 203 F. 3d 156, 160 (CA2 2000). And while many topics retain constitutional protection during extended breaks in a defendant's testimony (see Part IV–B, *infra*), testimony *qua* testimony does not.[3]

B

While not a model of clarity, the trial judge's order here did enough to tailor the "quality" of forbidden consultation,

---

[3] To be clear, we address here only the constitutional protection for—and not the ethical propriety of—discussion of testimony during an overnight recess. In other words, this opinion solely considers the extent of a court's *discretion* to ban such consultation. See *Perry* v. *Leeke*, 488 U. S. 272, 284–285 (1989). We do not disturb what a lawyer may discuss with her client in the absence of a court order. Nor do we touch upon what a lawyer *must* discuss with her client to render effective assistance.

*Padilla*, 203 F. 3d, at 160, to the rule we discern from *Geders* and *Perry*. As the TCCA explained, the order prohibited Villarreal's lawyers from "*managing*" his "ongoing testimony." 707 S. W. 3d, at 146. Forbidding that mode of discussion permissibly balanced the truth-seeking function of the trial against Villarreal's right to discuss protected topics with his lawyers.

Those protected topics are not insignificant. Indeed, under the rule we announce, many topics a testifying defendant and his lawyer might discuss during a midtestimony overnight recess remain protected. No less than before or after his testimony, a defendant's access to advice about trial strategy remains essential to the collaborative enterprise that is criminal defense. See *McCoy* v. *Louisiana*, 584 U. S. 414, 421–424 (2018). We have long held that "'[a]n accused is entitled to be assisted'"—not merely directed—"'by an attorney.'" *Kimmelman* v. *Morrison*, 477 U. S. 365, 377 (1986) (quoting *Strickland* v. *Washington*, 466 U. S. 668, 685 (1984)).[4] And just as lawyer advises client, so too does client advise lawyer: "More than merely allowing the defendant to participate in tactical decisions, consultation enables the lawyer to obtain factual information crucial to making them." *United States* v. *McLaughlin*, 164 F. 3d 1, 17 (CADC 1998) (Tatel, J., dissenting).

As we explained in *Perry*, a court may not stem this collaboration merely because it involves incidental discussion

_____

[4] See also, *e.g.*, *Faretta* v. *California*, 422 U. S. 806, 820 (1975) (explaining that the Sixth Amendment "speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant"); *Gannett Co.* v. *DePasquale*, 443 U. S. 368, 382, n. 10 (1979) (observing that the Sixth Amendment "contemplat[es] a norm in which the accused, and not a lawyer, is master of his own defense"); *Florida* v. *Nixon*, 543 U. S. 175, 178 (2004) ("Defense counsel undoubtedly has a duty to discuss potential strategies with the defendant" (citing *Strickland*, 466 U. S., at 688)); *Morris* v. *Slappy*, 461 U. S. 1, 21 (1983) (Brennan, J., concurring in result) ("[T]he attorney must work closely with the defendant in formulating defense strategy").

of testimony. 488 U. S., at 284; accord, *Geders*, 425 U. S., at 91 (explaining that any conflict between the Sixth Amendment and the desire for untutored testimony must "be resolved in favor of the right to the assistance and guidance of counsel"). For example, a court cannot prohibit a defendant from obtaining his attorney's advice on whether and why he should consider a guilty plea—even if the "why" includes the impact of his ongoing testimony on the trial's prospects. The Sixth Amendment does not abide a take-my-word-for-it vision of the attorney-client relationship. It does, however, tolerate a midtestimony conferral order prohibiting discussion of testimony as such, lest that discussion shape future testimony "in light of the testimony already given." *Id.*, at 87. The no-testimony-management order entered here falls on the constitutional side of that line.[5]

C

Having rejected Villarreal's frontline argument (that the Sixth Amendment affirmatively protects access to testimony management during an overnight recess), we also reject his backup. Even if the Sixth Amendment's protection does not itself span the full range of topics that might come up during a midtestimony recess, Villarreal asks for a prophylactic rule bubble-wrapping what the Sixth Amendment *does* protect. In Villarreal's view, a line dividing discussion of testimony from discussion of other topics is "no

———————

[5] The line between discussion of testimony for its own sake and discussion of testimony incidental to other topics may not always be razor sharp. We trust that defense counsel will not evade the spirit of qualified conferral orders by couching discussion of testimony *qua* testimony in strategic terms. For instance, unprotected discussion does not become protected simply by way of a preface explaining that a defendant's "chances of acquittal will improve" if he adjusts his testimony. Although such advice involves strategic considerations, at its core it seeks to shape future testimony in light of past testimony and thus is unprotected. Accord, *post*, at 4–5 (ALITO, J., concurring).

line at all." Brief for Petitioner 25. And so Villarreal fears that conferral orders like the one at issue here will operate to chill protected discussion *in effect* even if they do not do so formally. Villarreal thus demands a bright-line rule permitting no restrictions overnight.

This argument, which is not without force, has persuaded a number of lower courts. See, *e.g.*, *United States* v. *Santos*, 201 F. 3d 953, 965 (CA7 2000) ("*Perry* makes clear" that a no-discussion-of-testimony order violates the Sixth Amendment because it "would as a practical matter preclude the assistance of counsel across a range of legitimate legal and tactical questions"); *United States* v. *Triumph Capital Group, Inc.*, 487 F. 3d 124, 132–133 (CA2 2007) (similar); *United States* v. *Cobb*, 905 F. 2d 784, 792 (CA4 1990) (similar). But, importantly, those courts addressed conferral orders banning *any and all* discussion of the defendant's testimony, even if incidental to protected topics.

Uncompromising no-testimony-discussion orders like those are easy to articulate and hard to apply. That is because, as we have explained, protected discussion—*e.g.*, deliberation over whether to accept a guilty plea—often must involve some discussion of testimony. The courts of appeals that have prohibited blanket no-discussion orders have reasonably feared that directives preventing all discussion of testimony, full stop, would be impermissibly overbroad and thus dilute the Sixth Amendment's guarantee.

The same concern is not present with an order prohibiting only discussion of "nothing but the testimony." *Perry*, 488 U. S., at 284. Consultation about testimony itself— practicing it, debriefing it, and the like—is a recognized, distinct tool in every trial lawyer's preparatory arsenal. See, *e.g.*, Brief for Legal Ethics Scholars as *Amici Curiae* 10–11; Formal Opinion 508, at 1–2. We trust that lawyers ordered to sheathe that tool overnight will have no difficulty doing so.

## V

We do not share JUSTICE THOMAS's view that today's decision "needlessly expands our precedents." *Post*, at 2 (opinion concurring in judgment). It is true that "*Perry* never stated" the rule we draw from it and *Geders*. *Post*, at 7. If it did, there would have been no need to take this case. But for the reasons explained above, today's result follows neatly from our precedents.

"[B]efore he begins to testify," a defendant "has an absolute right" to confer with his lawyer. *Perry*, 488 U. S., at 281; accord, *Geders*, 425 U. S., at 88. Once he begins to testify, what was absolute becomes qualified, as "the testifying defendant does not have a constitutional right to advice" about his "ongoing testimony." *Perry*, 488 U. S., at 284. But the testifying defendant "does have a constitutional right to discuss" "matters that go beyond the content of [his] own testimony," even though "such discussions will inevitably include some consideration of the defendant's ongoing testimony." *Ibid.*; accord, *Geders*, 425 U. S., at 88, 91. We say no more than that today.

\* \* \*

The conferral order here prevented only one thing during the overnight recess that bifurcated Villarreal's testimony: Villarreal's lawyers could not manage his ongoing testimony in light of the testimony he had already given. Such management amounts to discussion of testimony *qua* testimony and therefore falls on the unprotected side of the line we discern from our precedents. Accordingly, the conferral order did not ban or impermissibly chill constitutionally protected consultation. The judgment of the TCCA is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 24–557

_____

## DAVID ASA VILLARREAL, PETITIONER *v.* TEXAS

ON WRIT OF CERTIORARI TO THE COURT OF CRIMINAL
APPEALS OF TEXAS

[February 25, 2026]

JUSTICE ALITO, concurring.

I agree that the trial court did not violate petitioner's Sixth Amendment right to the assistance of counsel by restricting consultation with his attorney during an overnight midtestimonial recess. I write to set out the framework under which courts should analyze limitations on communications between a criminal defendant and his attorney during a break in the defendant's testimony.

I

I begin with a word about the origin and nature of the constitutional right that petitioner invokes, that is, the right to confer with his attorney during an overnight break in his testimony. Petitioner claims that the Sixth Amendment right to the assistance of counsel includes this right. When the Sixth Amendment was adopted, however, criminal defendants could not testify in their own defense because they were not considered competent witnesses. See *Rock* v. *Arkansas*, 483 U. S. 44, 49–50 (1987). It follows that a defendant could not consult with an attorney about such testimony. Most States did not allow defendants to take the stand until well into the 19th century, see *Ferguson* v. *Georgia*, 365 U. S. 570, 576–577, and nn. 5–6 (1961), and this Court did not squarely recognize a defendant's constitutional right to testify in his own defense until its 1987 decision in *Rock*, 483 U. S., at 49. Even then, the Court did not

hold that the Sixth Amendment alone conferred this right. The Court pointed to several possible sources of the right but appeared to rely primarily on the Due Process Clause. See *id.*, at 51. And the Court made clear that the constitutional right to testify was subject to limitations designed to protect the truth-seeking function of trial. *Id.*, at 55–56, and n. 11. Limitations on midtestimonial attorney-client communications must therefore be analyzed against this backdrop.

## II

In considering the permissible scope of a defendant's midtestimonial consultation, it is helpful to begin with the baseline situation in which a defendant completes both direct and cross-examination without any break in the proceedings. In that situation, the governing rules allow the jury to hear the defendant's story in his own words from his own mouth, not a version of that story scripted or choreographed by counsel. A defendant may not, for instance, sign and present to the jury a carefully crafted affidavit of events written by counsel. Nor may the defense show the jury a video in which the defendant recites a prepared statement. And when the defendant is on the stand, defense counsel cannot pass him notes or speak to him via an earpiece.

Instead, the defendant must take the stand and speak directly to the jury in his own words. During direct examination, defense counsel generally may not lead the witness. Fed. Rule Evid. 611(c). That is, counsel may not ask questions in a form that suggests the answer that the defendant should give. And during cross-examination, counsel's participation is limited to objecting to any improper questions. Otherwise, the defendant is on his own.

A break in the proceeding—either a short break during the trial day or an overnight recess—should not fundamentally alter the rule that the defendant must testify without coaching by counsel. That is why we have held that during

a brief break a trial judge may prohibit all communications between the defendant and counsel. *Perry* v. *Leeke*, 488 U. S. 272, 281 (1989). In that situation, we observed, there was a "virtual certainty" that any communication between the defendant and his attorney would "relate to the ongoing testimony." *Id.*, at 283–284. When a defendant decides to take the stand, his testimony is a critical stage of the trial. If the jury comes away with a low opinion of his character or simply disbelieves his testimony, the chances of conviction increase, and if the jury forms a favorable opinion of the defendant and believes his testimony, he has a greater chance of acquittal. Thus, during this critical phase, counsel will almost certainly prioritize bolstering the defendant's testimony over all other matters. And since a short break gives the defendant and counsel little time to converse, they will likely discuss only the most urgent topic at hand. With much at stake and limited time for consultation, it is almost certain that any discussion will concern the remainder of the client's make-or-break testimony, not other matters that can be discussed after the testimony ends.

A trial judge *could* deal with this situation by allowing the defendant and counsel to confer but instructing them not to talk about the defendant's testimony. But the judge would have little ability to determine whether the defendant and counsel obeyed this instruction. The judge could not sit in on their conversation or later ask them what they said. Instead, the judge would have to rely heavily on the attorney's good faith. Although we may presume that most defense attorneys would try to follow the judge's instructions, our decision in *Perry*—holding that consultation during a short midtestimonial break may be completely barred—eliminates the danger of noncompliance.

### III

When a defendant's testimony cannot be completed by the end of a trial day, the situation is somewhat different. Some things remain the same: Because of its centrality, the defendant's testimony is very likely still the top priority. Accordingly, counsel's incentive to improve that testimony will remain strong. But because they will have more time, the likelihood that the attorney and client will also seek to discuss matters unrelated to the defendant's testimony will be greater. And particularly if the defendant's testimony is anticipated to finish before the end of the next trial day, the attorney and client might need to discuss other defense witnesses who will follow the defendant on the stand, as well as any rebuttal witnesses the prosecution might call.

In light of these different circumstances, the Court struck a different balance in *Geders* v. *United States*, 425 U. S. 80 (1976), and held that a trial judge may not prohibit all attorney-client consultation during an overnight break. But that decision did not alter the baseline rule that, if a defendant elects to take the stand, the jury is entitled to hear the defendant's own story in his own words, not a version crafted or edited by counsel. Thus, during an overnight break, a defendant may consult his attorney about matters other than the defendant's testimony, but any efforts to shape what the defendant will say when he resumes testifying are improper. And attempts to achieve that end indirectly are just as improper as attempts to do so directly.

For example, consider what defense counsel could and could not properly say during an overnight break concerning the tactical decision whether to seek a plea deal. Counsel could say, "Let's discuss what plea terms you would be willing to agree to," or, "We should seek a deal because there is a strong chance the jury will find you guilty." But counsel could not say: "We will really need to secure a deal unless you clean up mistakes A, B, and C that you made today on the stand." Nor could counsel say: "We will really

need to secure some sort of deal unless, when you return to the stand tomorrow, you stop scowling, looking down, and making nervous gestures with your fingers." Such efforts would constitute the sort of improper "coaching" that *Geders* does not allow. They would not be "incidental." *Ante*, at 9, 12, and n. 5, 13.

At bottom, a defendant and his counsel may not engage in midtestimonial discussions that affect the truth-seeking function of trial by improving or shaping the defendant's ongoing testimony. I join the majority opinion with the understanding that it draws this line.

# SUPREME COURT OF THE UNITED STATES

———

No. 24–557

———

## DAVID ASA VILLARREAL, PETITIONER *v.* TEXAS

ON WRIT OF CERTIORARI TO THE COURT OF CRIMINAL
APPEALS OF TEXAS

[February 25, 2026]

JUSTICE THOMAS, with whom JUSTICE GORSUCH joins, concurring in the judgment.

David Villarreal testified in his own defense at his murder trial. Partway through Villarreal's testimony, trial recessed for the day. The trial judge gave Villarreal and his counsel an order limiting what they could discuss during the break in his testimony. The judge told them that they could confer with each other overnight, but not about Villarreal's ongoing testimony. Villarreal was convicted. He now challenges the trial judge's order as violating his Sixth Amendment right to counsel.

The trial judge's order did not violate Villarreal's right to counsel under our precedents. In *Geders* v. *United States*, 425 U. S. 80 (1976), this Court held that a trial judge cannot bar a testifying defendant from conferring with counsel overnight because of his interest in discussing matters "other than his own testimony." *Id.*, at 88. In *Perry* v. *Leeke*, 488 U. S. 272 (1989), this Court held that a trial judge can bar a testifying defendant from conferring with counsel during a 15-minute recess. *Id.*, at 274, 283–284. Whatever right a defendant has to discuss other matters, the Court held, he has no "right to discuss [his] testimony while it is in process." *Id.*, at 284. The trial judge's order prohibiting discussion of Villarreal's ongoing testimony plainly complied with both precedents.

I cannot join the Court's opinion because it opines on hypothetical situations not before the Court and needlessly expands our precedents. I therefore respectfully concur only in the judgment.

## I

Petitioner David Villarreal was charged with murder and tried in Texas state court. Villarreal took the stand to testify in his own defense. While Villarreal was still on direct examination, the judge had to recess trial for the day due to a scheduling conflict. Ordinarily, a witness cannot consult with counsel during his testimony. See *Perry*, 488 U. S., at 281–282, and nn. 4–5; *Geders*, 425 U. S., at 87. The trial judge therefore instructed Villarreal's counsel not to discuss Villarreal's testimony overnight. But his order allowed Villarreal to confer with counsel about matters other than his ongoing testimony:

> "THE COURT: Normally your lawyer couldn't come up and confer with you about your testimony in the middle of the trial and in the middle of having the jury hear your testimony. And so I'd like to tell you that you can't confer with your attorney but [at] the same time you have a Sixth Amendment right to talk to your attorney.
>
> "So I'm really going to put the burden on [counsel] to tell you the truth. . . . I'm going to ask that [counsel] pretend that Mr. Villarreal is on the stand. You couldn't confer with him during that time.
>
> .          .          .          .          .
>
> "But I believe if you need to talk to your attorneys, I'm not telling you, you can't talk to them. But I'm going to rely on [counsel] to use your best judgment in talking to [Villarreal] because you can't—you couldn't confer with him while he was on the stand about his testimony. . . .

"DEFENSE COUNSEL #1: All right. So just so I am clear and don't violate any court orders, that—because he is still on direct and still testifying, that it is your ruling that we cannot confer with our client?

"THE COURT: Let me help you with that. For instance, suppose we go into a sentencing hearing and you need to start talking to him about possible sentencing issues, you can do that. Does that make sense? I don't want you discussing what you couldn't discuss with him if he was on the stand in front of the [j]ury.

"DEFENSE COUNSEL #1: Okay.

"THE COURT: His testimony. I'm not sure whatever else you'd like to talk with him about while he's on the stand. But ask yourselves before you talk to him about something, is this something that—manage[s] his testimony in front of the jury? Does that make sense to you?

"DEFENSE COUNSEL #1: Sure, it does.

"DEFENSE COUNSEL #2: We aren't going to talk to him about the facts that he testified about.

"THE COURT: All right. Fair enough. But at the same time—I'm going to put the burden on the lawyers, not on him, because he has a constitutional right to confer with you. At the same time, all lawyers are under— they're under different rules than the defendants are.

.         .         .         .         .

"And you're going to have to decide, if he asks you any questions and such, is this something that is going to be considered to be conferring with him on the witness stand while the jury is there or not." 707 S. W. 3d 138, 141–142 (Tex. Crim. App. 2024) (some alterations and boldface omitted).

Villarreal's counsel objected to the judge's order, but the judge overruled that objection. *Id.*, at 142–143.

Villarreal resumed testifying the next day. Neither he nor his counsel reported that the trial judge's order impeded any discussions. The record does not reflect that they planned to discuss any matter even arguably covered by the judge's order. The jury later found Villarreal guilty of murder.

On appeal, Villarreal argued that the trial judge's order, by preventing him from discussing his ongoing testimony with his counsel, violated his Sixth Amendment right to counsel. The Texas Court of Appeals affirmed because a trial court may "limit [a defendant's] right to confer with his attorneys during an overnight recess to topics other than his ongoing testimony." 596 S. W 3d 338, 343 (2019). The Texas Court of Criminal Appeals also affirmed on the ground that a defendant has no right to discuss "ongoing testimony." 707 S. W. 3d, at 144–146.

This Court granted certiorari. 604 U. S. 1241 (2025).

## II

The Sixth Amendment, made applicable to the States by the Fourteenth Amendment, guarantees to a criminal defendant the right to have "the Assistance of Counsel for his defence." It was enacted in response to English laws that sometimes forced defendants to represent themselves at trial. See *Garza* v. *Idaho*, 586 U. S. 232, 259 (2019) (THOMAS, J., dissenting). This Court has interpreted it to guarantee a defendant a right to discuss with counsel matters other than his ongoing testimony. The trial judge's order here allowed Villarreal and his counsel to discuss matters other than Villarreal's ongoing testimony overnight, so it did not violate his Sixth Amendment rights.

A

Under our precedents, a defendant "has no constitutional right to consult with his lawyer while he is testifying." *Perry*, 488 U. S., at 281. Rather, "when he assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well." *Id.*, at 282. Criminal defendants originally did not testify in their own defense at trial. See *Ferguson* v. *Georgia*, 365 U. S. 570, 573–575 (1961). When they began doing so, this Court explained that they would do so "subject to all [the] criticisms and burdens" of other witnesses. *Reagan* v. *United States*, 157 U. S. 301, 305 (1895). It is common practice for trial judges to prohibit other witnesses from discussing their ongoing testimony with counsel. See *Perry*, 488 U. S., at 281–282, and nn. 4–5; *Geders*, 425 U. S., at 87.

This Court has recognized only one exception to the general rule that a defendant has no constitutional right to consult with his lawyer while he is testifying. In *Geders*, this Court held that a trial judge could not bar a defendant from talking "'about anything'" with counsel during an overnight recess. *Id.*, at 91. As this Court would explain, the judge's order in *Geders* was unconstitutional only because it would impede discussion of matters "beyond the content of the defendant's own testimony." *Perry*, 488 U. S., at 284. In *Perry*, this Court held that a trial judge therefore could bar all conferral with counsel during a 15-minute recess because the Sixth Amendment does not protect discussion of "th[e] testimony while it is in process." *Ibid.*

Allowing any witness to discuss his ongoing testimony with counsel, *Perry* explained, would undermine the truth-seeking function of the trial. "Once the defendant places himself at the very heart of the trial process," the trial court can ensure that "the story presented on direct is measured for its accuracy and completeness by uninfluenced

testimony on cross-examination." *Id.*, at 282–283 (internal quotation marks omitted).

## B

The trial judge's order here complied with our precedents. The trial judge instructed defense counsel not to "discus[s] what you couldn't discuss with [Villarreal] if he was on the stand in front of the [j]ury," and explained that "you couldn't confer with him while he was on the stand about his testimony." 707 S. W. 3d, at 142 (boldface omitted). The trial judge otherwise allowed Villarreal and his counsel to meet and discuss anything that they wanted. *Ibid.* Under *Geders* and *Perry*, the trial judge's order was constitutional because Villarreal could discuss matters other than his testimony. See *Geders*, 425 U. S., at 88; *Perry*, 488 U. S., at 284. *Perry*, in fact, specifically endorsed orders that "permit consultation between counsel and defendant during such a recess, but forbid discussion of ongoing testimony." *Id.*, at 284, n. 8. The order therefore did not deny Villarreal "the Assistance of Counsel for his defence." U. S. Const., Amdt. 6.

*Perry* also rejected Villarreal's main counterargument. Villarreal argues that because it is difficult to distinguish discussion of testimony from discussion of other matters, he should have been able to discuss his testimony in order to ensure that he could discuss other topics, too. Brief for Petitioner 24–38. But in *Perry*, three Justices dissented partly because they, like Villarreal, did not believe that it was "possible to distinguish discussions regarding trial strategy from discussions regarding testimony." 488 U. S., at 295, n. 8 (opinion of Marshall, J.). The *Perry* majority made that distinction nonetheless and endorsed orders that turn on that distinction. *Id.*, at 284, n. 8.

### III

I am unable to join the majority opinion because it unnecessarily expands these precedents. It purports to "announce" a "rule" under which a defendant has a constitutional right to "discussion of testimony" so long as that discussion is "incidental to other topics." *Ante,* at 9, 11, 12, n. 5. It identifies new circumstances, not presented here, in which a defendant supposedly has a right to discuss matters related to his ongoing testimony. *Ante,* at 9–10, 12. And it endorses a methodology under which "any conflict between the Sixth Amendment and the desire for untutored testimony must 'be resolved in favor of the right to the assistance and guidance of counsel.'" *Ante,* at 12.

The majority opinion finds no support in *Perry*. As for a general right to discuss testimony, this Court in *Perry* explained in straightforward terms that "we do not believe the defendant has a constitutional right to discuss [his] testimony while it is in process." 488 U. S., at 284; cf. *ante*, at 9–11. *Perry* therefore endorsed orders that categorically "forbid discussion of ongoing testimony." 488 U. S., at 284, n. 8. That endorsement came in the context of a brief recess. *Id.*, at 284. But, unlike the majority opinion in this case, see *ante* at 9, 12, *Perry* never stated that those sorts of categorial orders are forbidden overnight. As for the potential conflict between the possibility for conferral and uncompromised testimony, see *ante,* at 12, *Perry* clarified that the Court would not read *Geders* to demand resolving them in favor of conferral in all cases. "[W]hen [a defendant] assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well." *Perry*, 488 U. S., at 282. Defendants, in other words, are generally "subject to" the same "criticisms and burdens" as other witnesses. *Reagan*, 157 U. S., at 305.

The majority opinion does not claim that its approach finds any support in the original meaning of the Sixth

Amendment.  The majority also does not claim that opining
on matters not presented by the facts was necessary to de-
cide this case, which involved an order that all agree was
constitutional.

I respectfully concur in the judgment.